## Andrews, Appellant, *v.* Smith et ux.

Argued October 2, 1936.   Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Thomas L. Kane,* for appellant.

*Arnold M. Replogle,* for appellees, was not heard.

OPINION BY MR. JUSTICE MAXEY, November 23, 1936: This is an action in trespass to recover damages from the biting of the plaintiff by defendants' dog.   At the close of the trial judgment of compulsory nonsuit was entered against the plaintiff.   A motion to take off the

nonsuit was argued before the court in banc. The majority of the court refused to take off the nonsuit; the trial judge dissented.

Defendants, husband and wife, occupied a house in Mount Lebanon Township, Allegheny County, as tenants by entireties. There was a garage under the porch on the side of the house and connected with the house. Both defendants were employed and were usually away from the house in the day time, the wife from before 9 A. M. until 6 or 7 P. M. and the husband until later at night. They kept on their property a German shepherd dog, known as "a police dog." They had the dog for about two years before it attacked the plaintiff. They claimed they had the dog for the purpose of protecting their property against marauders. When defendants were away from home the dog was kept in the house. They allowed the dog to run at large for exercise in the night time.

On December 27, 1930, about 8 P. M. the plaintiff was walking along Arden Road on the opposite side of the street from defendants' residence. The defendant, J. Albert Smith, was closing his garage doors when the dog ran out of the garage and across Arden Road and bit the plaintiff on the calf of his leg, drawing blood. The dog then ran back to the middle of the street, stopped and turned as if to attack plaintiff again, but turned and ran across the street and onto defendants' premises. After plaintiff was bitten by the dog he received medical attention, including the Pasteur treatment.

The opinion of the court below set forth that the evidence "failed to establish that the defendants, as owners of the dog in question, had knowledge that his dog was vicious and ferocious." The court said: "We consider as unchanged, the legal principle that a ferocious animal liable to do injury is a nuisance, and by keeping it, after notice, the owner is chargeable for any neglect to keep it with such care that it cannot damage a person without essential fault. This was the ruling pronounced in

*Mann v. Weiand,* 81½ Pa. 243. The mere allowing of a dog, of whose vicious or ferocious propensities no knowlelge is brought to the owner, to depart from the owner's premises between sunset and sunrise without being under the reasonable control of some person, we think, does not constitute a nuisance, nor charge the owner with liability for an injury worked to some person by being bitten by such a dog off the owner's premises." The court below also cited the opinion of the Superior Court in *Darby et al. v. Clare Food & Relish Co.,* 111 Pa. Superior Ct. 537, 170 A. 387, to the effect that "the gravamen of this action . . . is the keeping of a dog with knowledge of its vicious propensities."

That "the gist of the action for the subsequent misconduct of the dog, is for keeping it [where it may have an opportunity to injure persons] after knowledge of its vicious propensity," as set forth in *Mann v. Weiand* (supra), is the rule in England and in many other jurisdictions as well as in Pennsylvania, is evidenced by an examination of the cases. See *May v. Burdett,* 9 Q. B. 101, 115 English Reprints (44 King's Bench Division) 1213; *Wheeler v. Brant,* 23 Barb. (N. Y.) 324, and *Kittredge v. Elliott,* 16 N. H. 77.

In the first named case (which was a cause of action brought by plaintiff for injuries resulting from an attack by a monkey kept by defendants), Lord Denman, delivering the judgment of the court, said: "The conclusion to be drawn from an examination of all the authorities appears to us to be this: that a person keeping a mischievous animal with knowledge of its propensities is bound to keep it secure at his peril, and that, if it does mischief, negligence is presumed, without express averment. The precedents as well as the authorities fully warrant this conclusion. The negligence is in keeping such an animal after notice." In 1 Vin. Abr. 234, tit. Actions [Mischief by dogs, etc.] (H), pl. 3, it is said: "If a man has a dog that kills sheep, the master of the dog being ignorant of such quality, the master shall not

be punished for this killing, but if he has notice of such quality, it is otherwise." Declarations averring misconduct in the keeping of a horse, a dog, or a bull, but omitting the scienter, have been held insufficient: *Scetchet v. Eltham* (Freem. K. B. 534) ; *Mason v. Keeling* (12 Mod. 332; 1 Ld. Ray. 606) ; *Bayntine v. Sharp,* 1 Lutw. 90.

In *Cockerham v. Nixon,* 33 N. C. 269, the rule is stated thus: "As soon as the owner knows or has good reason to believe that the animal is likely to do mischief, he must take care of him; it makes no difference whether this ground of suspicion arises from one act or from repeated acts. The only restriction is that the act done must be such as to furnish a reasonable inference that the animal is likely to commit an act of the kind complained of."

The minority judge in his dissenting opinion said that the "maxim that 'every dog is entitled to his first bite' is not supportable in law or justice." With this we agree. We do not understand that this maxim has ever found acceptance in the courts of this Commonwealth. A dog may show ferocious propensities without biting anyone and if he does so, it is his master's duty to see to it that he is not afforded an opportunity to take a "first bite." The theory upon which courts have so long ruled that liability for damages cannot be fastened upon the owner of a dog when that dog has bitten someone unless the owner knew of the dog's vicious propensities, is that it would be unfair to hold the owners of domestic animals that are normally harmless responsible for the vicious acts of these animals unless they were put on notice that the animal was vicious. In so holding, the courts have merely applied the principle that no man is responsible for injuries caused by his property unless he himself was guilty of negligence in his manner of controlling or not controlling that property. A tree in a yard might be blown over by the wind and injure a passer-by. The owner of that tree would not be liable un-

less he had actual or constructive notice that the tree was in such a physical condition as not to be able to withstand the force of any wind which would be likely to blow in that vicinity, i. e., that it had a "propensity" to fall. It is, of course, an owner's duty to ascertain so far as it is practicable to do so whether a tree or any other property of his has become a menace, and, if it appears so to be, to take proper steps to eliminate its meance, but mere *ownership alone of inherently and apparently harmless property* does not carry with it liability for damages for an injury of which that property was the instrumentality. If a man kept a tiger or a venomous reptile on his premises and this animal or reptile inflicted injury upon another, the owner would be clearly liable because he would be chargeable with knowledge based upon the character of the animal or reptile that what actually happened was likely to happen. A decayed tree, or loose stones in or on a wall where they may fall, are obvious menaces to persons in their vicinity. (See *Pope v. Reading Co.*, 304 Pa. 326, 334, 156 A. 106.) Animals such as horses, oxen and dogs are not beasts that are feræ natura, i. e., wild beasts, but are classed as mansuetæ natura, i. e., tamed and domesticated animals, and their owners are not responsible for any vicious acts of theirs unless the owners have knowledge that they are likely to break away from their normal domestic nature and become vicious. Of all animals, dogs have probably been the longest domesticated and the vast majority of them can be allowed their freedom without imperiling the public safety.

What Mr. Justice HOLMES, when a judge of the Supreme Court of Massachusetts, said in the case of *Com. v. Pierce*, 138 Mass. 165, s. c., 52 Am. Rep. 264, on the subject of negligence, is applicable to this case: "Knowledge of the dangerous character of a thing is only the equivalent of foresight of the way in which it will act. If the thing is generally supposed to be universally harmless, and only a specialist would foresee that in a given

case it would do damage, a person who did not foresee it and who had no warning would not be held liable for the harm. . . ."

The majority of the court below correctly held that there is nothing in the Dog Law of May 11, 1921, P. L. 522, as amended by the Act of May 6, 1927, P. L. 833, that rendered defendants liable to the plaintiff for the injuries inflicted upon him by the former's dog. That act does not purport to change or affect in any way the rule that an owner's liability for the vicious acts of his dog cannot be predicated upon ownership alone but it must be based also on an owner's knowledge of his dog's viciousness and his failure then to take proper steps to prevent that viciousness displaying itself to the hurt of human beings.

The order of the court below is affirmed.