606 A.2d 489

**Cathy A. DEARDORFF, Natural Mother and Guardian of Jessica Deardorff, and Cathy A. Deardorff, Individually, Appellants,**

v.

**Carol BURGER, Appellee.**

Superior Court of Pennsylvania.

Argued Jan. 15, 1992.

Filed April 3, 1992.

Theresa L. Shade Wix, Harrisburg, for appellants.

Kerry V. Smith, Harrisburg, for appellee.

Before McEWEN, POPOVICH and JOHNSON, JJ.

POPOVICH, Judge:

In this appeal, we re-examine the law concerning the liability of dog owners for the actions of their pets. We are asked to review the June 26, 1991, order of the Court of Common Pleas of Dauphin County denying a motion for a new trial filed by the plaintiff/appellant, Cathy A. Deardorff, natural mother and guardian of Jessica Deardorff, individually.[1] We affirm.

In reviewing the denial of a motion for a new trial, this Court will reverse only when the lower court has clearly and palpably abused its discretion or committed an error of law which controlled the outcome of the case. *Lilley v. Johns–Manville Corp.*, 408 Pa.Super. 83, 596 A.2d 203 (1991).

With the preceding in mind, our review of the evidence discloses that, on the afternoon of November 16, 1986, 2–year–old Jessica, her father (David) and Shane Burger were in Shane's backyard raking leaves. Within 15 minutes of their arrival, Shane let the dog out of the house to roam in the backyard.

Shane recalled that the trio played in the leaves and Jessica ran toward the dog, a 75–pound German shepherd named "Smokey". Jessica was told by her father to "get

1. The June 26, 1991, order was reduced to judgment on July 11, 1991, and, thus, is appealable. Pa.R.App.P. 301(c).

back" toward him. Shane offered to return the dog to the house, but the father did not feel it was necessary. The next thing to occur, as told by Shane, was that:

> ... [the child] was playing in the leaves. And she came upon [the dog] ... She hugged him around the neck and she was off to the side. And [the dog] tried ... to get away from her at that point in time....

> ... [I]t all happened so fast. [Shane] just saw Smokey pulling back. There was—if he would have bit Jessica, she probably would not have a face at this point in time. He's got quite a snout on him. He did yelp, okay, as he usually does when something's happening to him that he does not like. But [Shane] did not see [the dog], you know—there was no lunging at the child or anything like that. The dog veered back. She fell down, and we grabbed the kid and, you know, went because then we realized ... she's bleeding.... And it just happened like that, (indicating) that fast. [N.T. 54]

Jessica was taken to the hospital, sedated and received stitches "all over the face ... under the eye, over her eye [and] by her lip[.]" The child was released the same day. Within a month, the stitches were removed, and a scar remained above and below the child's left eye.

On June 13, 1988, a writ of summons was filed against Carol Burger, Shane's mother and the owner of the home in which the dog lived, for "negligently and carelessly restraining her dog." Paragraph 5. The plaintiff claimed damages in excess of $20,000 for the injuries sustained by the child "[d]ue solely to the negligence and carelessness of [Carol Burger]." Id. at 6. Following a two-day trial, the jury returned a verdict in favor of the defendant/Carol Burger. Post-trial motions were denied and an appeal to this Court ensued.

 The first claim of the appellant concerns the assertion that the trial court erred in refusing to charge the jury on the theory of absolute liability of a dog owner aware of the animal's vicious propensities and the resulting injuries incurred by someone bitten by the animal. This liability,

the appellant maintains, is absolute regardless of the circumstances of the accident and the exercise of any care or caution by the dog's owner.

The appellant cites Section 509 of the Restatement (Second) of Torts and *Mann v. Weiand*, 81* Pa. 243 (1875) in support of her proposition. We find that the trial court's instructions on negligence were sufficient and did not require the inclusion of an absolute liability charge given that Section 509 of the Restatement (Second) of Torts has yet to be adopted in this Commonwealth, a point which the appellant concedes in her brief at page 11.

With regard to the case of *Mann v. Weiand*, supra, a civil action for damages resulting from the defendant's *negligent* keeping of a ferocious dog, the court wrote:

We think one instance may show such unmistakable evidence of a vicious propensity as to make the owner of the dog, with notice, liable for any subsequent act of a similar character. The *gist* of the action for the subsequent misconduct of the dog, is for keeping it after knowledge of its vicious propensity: *May v. Burdett*, 9 Q.B., 101; *Wheeler v. Brandt*, 23 Barb., 324. It thereupon becomes the duty of the owner so to keep his dog as to guard against a repetition of similar misconduct. He is bound to secure it at all events, and is liable to parties afterwards injured if the mode he has adopted to secure it proves insufficient: Wood on Nuisance, section 763; *Jones v. Perry*, 2 Esp., 482; *Mason v. Keeling*, 12 Mod., 332. The principle on which this rule rests was held in *Mann v. Reed*, 4 Allen, 431, to be, that a ferocious animal, liable to do injury to men or property, is a nuisance, and that keeping it after notice of such liability is so wrongful, that the owner is chargeable for any neglect to keep it with such care that it cannot do any damage to a person who without any essential fault is injured thereby.

The same rule applies with reference to other nuisances: Wood on Nuisances, section 766; *Foish v. Sheet*, 221 Barb., 333; *Hughes v. McNamara*, 106 Mass., 281; *Marsh v. Jones*, 21 Vt., 378. Hence the keeping of a

vicious dog near a public highway, endangering the safety of persons passing thereon, is a nuisance, operating as an obstruction, and renders the person knowingly keeping it there liable to indictment, and also liable to an action in favor of any person injured thereby: *Granger v. Findley*, 7 Irish C.L.Rep., 417; Wood on Nuisance, section 768. 81* Pa. at 254. The reason for so holding was that an owner of a dog, after he had notice, was bound to secure it at all events, and failure to do so resulted in the owner's liability to persons injured thereafter. See *Commonwealth v. Carl*, 87 Pa.Super. 110, 112 (1925).

In *Andrews v. Smith*, 324 Pa. 455, 188 A. 146 (1936), our Supreme Court had occasion to re-examine the question in the context of a compulsory non-suit. It wrote:

The theory upon which courts have so long ruled that liability for damages cannot be fastened upon the owner of a dog when that dog has bitten someone unless the owner knew of the dog's vicious propensities, is that it would be unfair to hold the owners of domestic animals that are normally harmless responsible for the vicious acts of these animals unless they were put on notice that the animal was vicious. *In so holding, the courts have merely applied the principle that no man is responsible for injuries caused by his property unless he himself was guilty of negligence in his manner of controlling or not controlling that property.*

\* \* \* \* \* \*

mere *ownership alone of inherently and apparently harmless property* does not carry with it liability for damages for an injury of which that property was the instrumentality.

\* \* \* \* \* \*

"Knowledge of the dangerous character of a thing is only the equivalent of foresight of the way in which it will act. If the thing is generally supposed to be universally harmless, and only a specialist would foresee that in a given case it would do damage, a person who did not foresee it

and who had no warning would not be held liable for the harm...."

The majority of the court below held that there is nothing in the Dog Law of May 11, 1921, P.L. 522, as amended by the Act of May 6, 1927, P.L. 833, that rendered defendants liable to the plaintiff for the injuries inflicted upon him by the former's dog. That act does not purport to change or affect in any way the rule that an owner's liability for the vicious acts of his dog cannot be predicated upon ownership alone but it must be based also on an owner's knowledge of his dog's viciousness and his failure then to take proper steps to prevent that viciousness displaying itself to the hurt of human beings.

324 Pa. at 459–460, 188 A. 146 (Emphasis added). Thus, it is clear from the *Andrews v. Smith* ruling, which made specific reference to and discussed *Mann v. Weiand,* that mere awareness and ownership of a vicious animal does not *per se* expose one to liability for injuries inflicted absent a failure on the part of the owner to take proper precautions to preclude that viciousness from exhibiting itself. Id.; but see *Darby v. Clare F. And R. Co.,* 111 Pa.Super. 537, 540, 170 A. 387 (1934).

More recently, this Court in *Miller v. Hurst,* 302 Pa.Super. 235, 448 A.2d 614 (1982) (en banc), had reason to decide whether a dog owner who permitted a dog to run free in violation of the Dog Law of 1965,[2] requiring that the dog be restrained, was liable, without further proof of negligence, for injuries caused when the dog bit a child.

We found that the Legislature enacted the statute to protect the public from personal injury, property damage and other hazards created by roving dogs. As a result, we:

... adopt[ed] the requirement of the statute as the standard for determining whether a person ha[d] complied with the common law duty to exercise ordinary care.

\* \* \* \* \* \*

2. The Act of December 22, 1965, P.L. 1124, Art. VII, § 702, 3 P.S. § 460–702, repealed by The Dog Law of 1982, December 7, P.L. 784, No. 225, Art. I, § 101, 3 P.S. § 459–101 et seq. (Supp.1991).

[We went on to hold that, a]lthough some states ha[d] gone further and imposed absolute liability for damages caused by roving dogs, we f[ou]nd it improvident and unnecessary to effect such a monumental change without legislative action. The legislature in Pennsylvania [was observed to] ha[ve] enacted a Dog Law which require[d] that owners of dogs prevent their animals from running at large, but it ha[d] not yet imposed absolute liability upon an owner who violate[d] such law. Therefore, we d[id] not usurp the function and prerogative of the legislature. We h[e]ld merely that violation of the legislatively enacted Dog Law is negligence per se.[8] This, we believe[d], [wa]s consistent with the intent of the legislature and also with the holdings of courts of other jurisdictions having similar laws.

---

8. A dog owner may always show that his or her dog escaped despite the exercise of due care. In such case, the roving of the dog would not constitute negligence.

Id., 302 Pa.Superior Ct. at 243–244 & n. 8, 448 A.2d at 618–619 & n. 8.

Likewise, the successor to The Dog Law of 1965 makes no provision for imposing absolute liability upon dog owners for failing to keep their dogs confined or controlled; to-wit:

§ 459–305. Confinement of dogs

It shall be unlawful for the owner or keeper of any dog to fail to keep at all times such dog either:

(1) confined within the premises of the owner;

(2) firmly secured by means of a collar and chain or other devise so that it cannot stray beyond the premises on which it is secured; or

(3) under the reasonable control of some person, or when engaged in lawful hunting, exhibition or field training.

The Act of December 7, 1982, P.L. 784, No. 225, Art. III, § 305, effective January 1, 1983, 3 P.S. § 459–305 (Supp. 1991); see also *Andrews v. Smith*, supra.

However, we do not rest our decision upon the absence of any provision in the present and past dog statutes to establish liability premised upon notions of absolute liability, for a person may rely on common law principles, in addition to statutory violations, to establish liability. See *Skowronski v. Bailey*, 330 Pa.Super. 83, 478 A.2d 1362, 1365 n. 3 (1984). Nonetheless, under either category, be it statute or common law principles, we are convinced that proof of negligence, in contrast to holding one absolutely liable, is the vehicle by which accountability for injury sustained because of a dog bite is to be established. See *Andrews v. Smith*, supra; *Miller v. Hurst*, supra.

Therefore, the trial court acted properly in refusing to instruct the jury that absolute liability was established once it was shown that the appellee had knowledge of Smokey's previous biting of one John Walmer. See *Andrews v. Smith*, supra; *Miller v. Hurst*, supra.

■ The second argument proffered by the appellant suggests that the trial court erred in failing to instruct the jury that a single instance of vicious conduct on the part of a dog is sufficient to put its owner on notice of the dog's vicious propensities.

Again, we look to *Andrews v. Smith*, supra, for guidance in responding to the appellant's assertion; namely, the Court wrote:

"As soon as the owner knows or has good reason to believe that the animal is likely to do mischief, he must take care of him; it makes no difference whether this ground of suspicion arises from one act or from repeated acts. *The only restriction is that the act done must be such as to furnish a reasonable inference that the animal is likely to commit an act of the kind complained of.*"

The minority judge in his dissenting opinion said that the "maxim that 'every dog is entitled to his first bite' is not supportable in law or justice." With this we agree. We do not understand that this maxim has ever found accept-

ance in the courts of this Commonwealth. A dog may show ferocious propensities without biting anyone and if he does so, it is his master's duty to see to it that he is not afforded an opportunity to take a 'first bite.'

\* \* \* \* \* \*

Animals such as horses, oxen and dogs are not beasts that are ferae nature, i.e., wild beasts, but are classed as mansuetae natura, i.e., tamed and domesticated animals, and their owners are not responsible for any vicious acts of theirs unless the owners have knowledge that they are likely to break away from their normal domestic nature and become vicious. Of all animals, dogs have probably been the longest domesticated and the vast majority of them can be allowed their freedom without imperiling the public safety.

324 Pa. at 458, 459, 188 A. 146 (Emphasis added). Further, in *Mann v. Weiand, supra,* the Court observed that "one instance [of an attack by a dog] may show such unmistakable evidence of a vicious propensity as to make the owner of the dog, with notice, liable for any subsequent act of a similar character." 81\* Pa. at 254. Accord *Fink v. Miller,* 330 Pa. 193, 195, 198 A. 666 (1938).

Instantly, the testimony on the question of propensity was equivocal. For example, Shane Burger was told by the appellee of the incident in which Smokey bit a Mr. Walmer. However, he did describe how Mr. Walmer had been observed kicking Smokey on three occasions. During each episode, the dog, according to Shane, "back[ed] down" or "just ... jerked away" and made its way into the backyard with its tail between its legs. The dog never exhibited any signs of viciousness to Shane or Mr. Deardorff.

Also, Shane depicted Smokey as a "kind" animal—like a big puppy dog—who had never "snapped" at the witness or anyone else in its company.

The appellee described Smokey in terms similar to her son's account, e.g.,

He's a great dog. He has a great personality. He's actually very timid. If he does anything wrong, he's the kind of dog that if he does something wrong he'll sit back and put his ears back...." [N.T. 69]

Smokey had played with other children without "any difficulties" and the animal was considered "just ... part of the family". In light of the preceding, the trial court gave the following charge to the jury:

... an important thing for you to decide is whether this dog, Smokey, had vicious propensities. The dictionary defines propensity as being an intense and often urgent natural inclination to do something. Therefore, in considering whether the dog has a propensity towards violence, you must determine whether the dog had an intentional and often urgent natural inclination to be vicious. It's the Plaintiff's burden to prove that the Defendant was negligent, and a part of that in this case is that this dog Smokey had dangerous propensities.

Even if you find that Smokey was a dog with vicious or dangerous propensities, the Plaintiff must establish that Defendant Carol Miller knew that, that she had knowledge that her dog had those propensities. No matter how innocent the victim may be or how serious the injury sustained, the owner of the dog is not responsible for the consequences of the dog's bite if she has no reason to know the viciousness or dangerous propensities of the dog. [N.T. 85–86]

Consistent with the precepts espoused by the Court in *Andrews v. Smith*, supra, and *Mann v. Weiand*, supra, we find that, because of a lack of evidence concerning the circumstances surrounding the Walmer incident, it would have been improper for the trial court to have advised the jury, in unqualifying terms, that a single bite on a prior occasion was sufficient to put the appellee on notice of Smokey's alleged "vicious" propensity. See *Fink v. Miller*, supra.

Accordingly, since the appellant did not prove that Smokey had unmistakable vicious tendencies known to the ap-

pellee, from the single bite of Mr. Walmer, she failed to make out a case warranting the single-bite instruction. Id.

■ As to the last of the appellant's averments, we adopt the rationale of the lower court in response thereto as appropriate and proper under the facts and law; to-wit:

Finally, the plaintiff contends that the Court erred in refusing to instruct the jury that the negligent acts of one co-owner of a dog may be imputed to the other co-owner of that dog. The plaintiff asserts that the Court should have told the jury that when individuals are engaged in a common enterprise, a mutual relationship of agency is created among them and that a finding of negligence regarding one of them will be imputed to the other. The plaintiff cites *DeVillars v. Hessler*, 363 Pa. 498, 70 A.2d 333 (1950) in support of this argument. The plaintiff concludes that such an instruction was warranted because the defendant and her son, Shane, were co-owners of "Smokey." Actually, in the present case, there was no allegation in the complaint that the defendant and her son were co-owners of the dog, or that the son was negligent. The testimony did establish the premise that mother and son were co-owners. Legally, the *DeVillars* case is no authority for the premise that one negligent owner of a dog makes the other owner responsible and we are satisfied now, as we were at the trial, that the suggested instruction was not proper in this case.

Lower Court Opinion at 8.

From our review of the evidence against the backdrop of the applicable law, we find that the jury's verdict was proper, and no error was committed by the trial court to justify the grant of a new trial.

Order affirmed.