690 A.2d 705

**Joseph ERITANO and Pamela Eritano, et al., Appellants,**

v.

**COMMONWEALTH of Pennsylvania (Brad
Figley and Marlene Figley) Appellees.**

Supreme Court of Pennsylvania.

Argued Sept. 19, 1996.

Decided Feb. 25, 1997.

374

Elizabeth T. Stevenson, Louis M. Tarasi, Pittsburgh, for Appellants.

Thomas E. Lippard, Craig Frischman, Donald M. Lund, Pittsburgh, for Appellees.

Before FLAHERTY, ZAPPALA, CAPPY, CASTILLE and NIGRO, JJ.

## *OPINION*

ZAPPALA, Justice.

The question posed by this appeal is whether a dog that had not previously demonstrated any vicious propensities may be declared "dangerous" pursuant to the Dangerous Dog section of the Dog Law, 3 P.S. § 459–502–A,[1] after the dog bit a child and caused severe injury.

The record establishes that on September 2, 1991, Appellants, Joseph and Pamela Eritano, permitted their children Joshua, age fifteen, and Lauren, age five, to visit the home of Appellees, Brad and Marlene Figley. While there, Lauren was given a piece of chicken by the Figleys' daughter, Nicole. As Lauren attempted to eat the chicken, the Figleys' dog, Sama, lunged for the chicken and bit Lauren's face and neck. Lauren sustained multiple lacerations of the face and scarring to her lip and neck, which required plastic surgery. Sama is

1. Act of May 31, 1990, P.L. 213 No. 46, § 2 as amended, 3 P.S. §§ 459–501–A through 459–505–A.

an Akita breed of dog and had never previously attacked or bit an individual.

Appellants subsequently filed a complaint with the district justice pursuant to the Dangerous Dog section of the Dog Law, contending that Sama should be declared dangerous.[2] That section provides:

> (a) **Determination.**—Any person who has been attacked by a dog, or anyone on behalf of such person, a person whose domestic animal has been killed or injured without provocation, the State dog warden or the local police officer may make a complaint before a district justice, charging the owner or keeper of such a dog with harboring a dangerous dog. The determination of a dog as a dangerous dog shall be made by the district justice upon evidence of a dog's history or propensity to attack without provocation based upon an incident in which the dog has done one or more of the following:
>
> (1) Inflicted severe injury on a human being without provocation on public or private property.
>
> (2) Killed or inflicted severe injury on a domestic animal without provocation while off the owner's property.
>
> (3) Attacked a human being without provocation.
>
> (4) Been used in the commission of a crime.

3 P.S. § 459–502–A.[3]

Following a hearing, the district justice declared the dog

---

**2.** The Eritanos also filed a civil action against the Figleys seeking monetary damages, which was settled by agreement.

**3.** The consequences of declaring a dog dangerous under the Law are many. The owner of the dog must properly confine the dog, and post a sign warning that a dangerous dog is on the premises. 3 P.S. § 459–503–A. A surety bond in the amount of $50,000, or an insurance policy of the same amount, payable as damages for any personal injury inflicted by the dog, must be obtained. *Id.* The owner must also register the dog as dangerous and obtain a dangerous dog certificate. The owner may not permit the dangerous dog to leave the proper enclosure without a muzzle and the restraint of a substantial chain or leash. 3 P.S. § 459–504–A. Finally, any violation of the requirements of the Law subjects the dog owner to a charge of a misdemeanor in the third degree. 3 P.S. § 459–505–A(a).

dangerous.[4] The common pleas court vacated the decision and held that the dog merely acted on its instincts when it bit at the meat the child was holding. The Commonwealth Court affirmed, reasoning that before a determination of dangerousness is made, evidence of the dog's "history or propensity to attack" must be demonstrated. The court noted that the dog's history did not reveal any aggressive behavior. It agreed with the trial court that the dog did not attack Lauren and that her injuries were accidental.

Judge Pellegrini filed a dissenting opinion in which he stated that the Dangerous Dog section of the Dog Law was enacted to eliminate the common law requirement of proving that the dog owner had knowledge of the animal's propensity to attack. He found that the clear language of the statute required the injured party to prove "an" incident of proscribed conduct under the Law. He concluded that subsection (1), which provides that the dog "[i]nflicted severe injury on a human being without provocation on public or private property," was established and therefore the dog should have been declared dangerous.

■ Our scope of review is whether the trial court's findings are supported by competent evidence, whether errors of law have been committed, or whether the trial court's determinations demonstrate a manifest abuse of discretion. *See Commonwealth of Pennsylvania, Department of Transportation v. Tarnopolski*, 533 Pa. 549, 626 A.2d 138 (1993).

As we examine the language of § 459–502–A, we keep in mind that the object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. 1 Pa.C.S. § 1925(a). When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit. 1 Pa.C.S. § 1921(b).

■ As noted, § 459–502–A provides that a person who has been attacked can file a complaint before a district justice

---

**4.** The record is unclear as to which subsection of § 459–502–A the district justice relied upon.

charging an individual with harboring a dangerous dog, and that the dog may be declared dangerous based upon an incident involving the attacking of a human being without provocation.

The statute defines "attack" as

[t]he deliberate action of a dog, whether or not in response to a command by its owner, to bite, to seize with its teeth or to pursue any human, animate or inanimate object, with the obvious intent to destroy, kill, wound, injure or otherwise harm the object of its action.

3 P.S. § 459–501–A.

 The lower courts held that the dog did not "attack" the child since its act of lunging for the chicken was merely instinctual.[5] In a similar fashion, Appellees assert that because the dog was attempting to recover a piece of chicken, the dog did not possess "the obvious intent to destroy, kill, wound, injure or otherwise harm the object of its action." We disagree. Although we are constrained to follow the statutory language, we must also assume that the legislature did not intend an absurd result. 1 Pa.C.S. § 1922(1); *Commonwealth v. Jenner*, 545 Pa. 445, 681 A.2d 1266 (1996). It would be contrary to the purpose of the Act to hold that a child whose injuries were so severe as to require plastic surgery had not been attacked by the animal that inflicted the wounds. If the lower courts' narrow interpretation were to be adopted, a dog could repeatedly inflict severe injury upon individuals and not be declared dangerous if the injuries were inflicted while the animal was "playing" or, as in this case, attempting to recover food. Each incident would not be considered an "attack" and therefore a "history or propensity to attack" could never be established. Although we cannot ascertain the intent of the

5. Although the Commonwealth Court asserts that it did not address the issue of whether the dog's actions constituted an attack, *see* 663 A.2d at 874 n. 3, the court later stated that "... [the dog] never exhibited a propensity for vicious or aggressive behavior, **nor had she attacked** [the child]...." *Id.*

animal,[6] we presume that because the dog in fact severely injured the child, it intended to do so in order to recover the chicken she was attempting to eat.[7]

■ The statute also requires that the dog acted without provocation. Although the Dog Act does not define the term "provocation," "to provoke" has been defined by *Webster's Ninth New Collegiate Dictionary* 948 (1986), as to "arouse to a feeling or action; to incite to anger; to call forth; to stir up purposely."[8] A child attempting to eat a piece of chicken clearly does not fall within such definition.

■ The statute next provides that the determination of a dog as dangerous "shall be made . . . upon evidence of a dog's history or propensity to attack without provocation based upon an incident in which the dog" attacks, has inflicted severe

---

**6.** While the statute focuses on the dog's intent, prior case law held that intention forms no part of an animal's assault and battery, and the mood in which it inflicts harm is immaterial, so far as the owner's duty goes. *Groner v. Hedrick*, 403 Pa. 148, 151, 169 A.2d 302, 303 (1961). We stated,

> Although an animal is actuated solely by mischievousness or playfulness, rather than maliciousness or ferociousness, yet it has a tendency to do a dangerous or harmful act, it has a vicious propensity within the meaning of the rule holding the owner or keeper liable for injuries resulting from vicious propensities of which it has knowledge.

*Id.*, citing 3 C.J.S. § 148 c, p. 1250.

**7.** We note that in Judge Pelligrini's dissenting opinion, he finds that the child was not attacked and therefore subsection (3) of § 459–502–A was not satisfied. In holding that the dog should be declared dangerous, he relied on subsection (1) which essentially states that the dog inflicted severe injury on a human without provocation. What the dissenting opinion overlooked is that the statutory language requires an "attack" before any consideration of the circumstances enumerated in the subsections. Thus, if a person was not attacked, the inquiry ends and the dog cannot be declared dangerous.

**8.** Black's Law Dictionary defines it as "[t]he act of inciting another to do a particular deed. That which arouses, moves, calls forth, causes or occasions. Such conduct or actions on the part of one person towards another as tend to arouse rage, resentment, or fury in the latter against the former, and thereby cause him to do some illegal act against or in relation to the person offering the provocation." *Black's Law Dictionary* 1225 (6th ed. 1990).

injury, or attacked without provocation.[9] Appellants contend that the phrase "an incident" suggests that one instance of a dog attack is sufficient to declare the dog dangerous. We disagree. We note that the terms "history" and "propensity" are stated in the disjunctive and are not defined in the statute. We therefore again refer to *Webster's Ninth New Collegiate Dictionary* 573 (1986), which defines "history" as "a chronological record of significant events." Clearly this term implies successive occurrences. The word "propensity" is defined as "an often intense natural inclination or preference." *Id.* at 943. The word "often" in the definition of propensity leads us to the conclusion that more than one event is required. Thus, the statutory language does not refer to an isolated incident, but rather a continued pattern of behavior. We find that the term "an incident" refers to the event which brings the question of the dog's dangerousness before the district justice, and the determination of dangerousness is to be made upon evidence of a history or propensity to attack. The incident giving rise to the filing of the complaint cannot alone establish the dog's history or propensity to attack. We have examined the legislative history of this provision and found no evidence to the contrary.[10]

Applying the statute to the instant case, we find that although it was established that the dog attacked the child without provocation, the record failed to demonstrate that the

9. Although previous case law regarding dog owner liability is of marginal relevance, we note that the common law rule provided that the dog owner was only liable for injuries inflicted by his dog if he knew or had reason to know of the dog's propensity to be dangerous. *Andrews v. Smith*, 324 Pa. 455, 188 A. 146 (1936). This concept has been referred to as the "one bite rule" since one instance of a dog biting an individual would put an owner on notice of the dog's vicious propensity and make the owner liable for subsequent acts of a similar character. This term, however, is a misnomer since the Court in *Andrews* made it clear that an owner may become aware of a dog's vicious propensities without the dog ever actually biting an individual. See *Andrews*, 324 Pa. at 458, 188 A. at 147–148.

10. If the legislature, in fact, intended to abrogate the common law "one bite" rule and render a dog dangerous after a single incident, the language it employed in drafting the statute lacks the clarity to accomplish the same.

dog had a history or propensity to attack. Prior to the incident giving rise to the complaint, the dog had never exhibited aggressive conduct or bitten or attacked another individual. Thus, the lower courts properly concluded that the requirements for declaring the dog dangerous were not met.[11]

For the reasons set forth herein, the order of the Commonwealth Court is affirmed.

NEWMAN, J., did not participate in the consideration or decision of this case.

NIGRO, J., files a dissenting opinion.

NIGRO, Justice, dissenting.

I respectfully dissent. The majority has established a rule which resurrects the common law "one bite" rule the Dangerous Dog Law was intended to replace. The majority finds that, for a dog to be declared dangerous, more than one incident of proscribed conduct must be proven. I dissent because I believe that this holding is contrary to the plain language and intent of the statute.

Under the common law "one bite" rule, a dog owner was not liable for his dog's first bite or attack. The theory behind this rule was that the owner should not be held liable for the first incident in which his or her dog attacked because, until such an attack, the owner had no reason to believe that his dog might be dangerous. *Andrews v. Smith,* 324 Pa. 455, 188 A. 146 (1936); *Deardorff v. Burger,* 414 Pa.Super. 45, 606 A.2d 489 (1992).

However, the increase in the number of violent incidents involving dogs have prompted many states, including Pennsylvania, to enact dangerous dog laws. These laws provide methods for the confinement of animals and reduce the burden previously placed on injured parties to prove that an animal owner either knew or should have known of the animal's

---

11. It should be noted that Appellees contend that an appeal of the trial court's determination violates their right against double jeopardy. This argument is meritless as the action against them is civil in nature and thus double jeopardy does not apply.

propensity to injure people. *See, e.g., Forsyth v. Dugger,* 169 Ill.App.3d 362, 365, 119 Ill.Dec. 948, 950, 523 N.E.2d 704, 706 (1988), *cert. denied,* 122 Ill.2d 574, 125 Ill.Dec. 216, 530 N.E.2d 244 (1988).

The intent of the legislature is clear from the plain language of the statute. The Dangerous Dog section of the Dog Law provides:

> (a) Determination.—Any person who has been attacked by a dog, or anyone on behalf of such person, a person whose domestic animal has been killed or injured without provocation, the State dog warden or the local police officer may make a complaint before a district justice, charging the owner or keeper of such a dog with harboring a dangerous dog. The determination of a dog as a dangerous dog shall be made by the district justice upon evidence of a dog's history or propensity to attack without provocation *based upon an incident* in which the dog has done one or more of the following:
>
> (1) Inflicted severe injury on a human being without provocation on public or private property.
>
> (2) Killed or inflicted severe injury on a domestic animal without provocation while off the owner's property.
>
> (3) Attacked a human being without provocation.
>
> (4) Been used in the commission of a crime.

3 P.S. § 459–502–A. (emphasis added)

The majority concludes that

> the term 'an incident' refers to the event which brings the question of the dog's dangerousness before the district justice, and the determination of dangerousness is to be made upon evidence of a history or propensity to attack. The incident giving rise to the filing of the complaint cannot alone establish the dog's history or propensity to attack.

This interpretation does not comport with the language of the statute, which provides that the determination of whether a dog is a dangerous dog should be made "upon evidence of a dog's history or propensity to attack ... based upon *an incident* ...." 3 P.S. § 459–502–A.

Moreover, the majority engages in an analysis of the meaning of the terms "history" and "propensity," concluding that in order to demonstrate either one, proof must be offered of a continued pattern of behavior. This interpretation treats the term "propensity" as mere surplusage. Such an interpretation is contrary to the principles of statutory construction, which indicate that "whenever possible, each word in a statutory provision is to be given meaning and not to be treated as surplusage." *In re Employees of Student Services*, 495 Pa. 42, 52, 432 A.2d 189, 195 (1981); *Habecker v. Nationwide Ins. Co.*, 299 Pa.Super 463, 445 A.2d 1222 (1982). The term "propensity" has a meaning which is separate and distinct from that of the term "history." While I agree that proof of history involves proof of a continued pattern of behavior, I would hold that proof of propensity can be established by evidence other than mere repetition of behavior.[1]

Thus, I agree with Judge Pelligrini's dissent wherein he finds one incident sufficient to have a dog declared dangerous, even if it is the same incident which brings the question of the dog's dangerousness before the district justice.

I agree with the majority's finding that, in the present case, it was established that the dog attacked the child without provocation. However, I would hold that the lower courts erred in concluding that the requirements for declaring the dog dangerous were not met.

---

1. For instance, evidence of a particular breed's predilection for vicious behavior, when coupled with proof of the event which brings the question of the dog's dangerousness before the district justice, might be sufficient to demonstrate a propensity to attack.