COMMONWEALTH of Pennsylvania

v.

Sandra COMELLA, Appellant.

Commonwealth Court of Pennsylvania.

Submitted on Briefs June 14, 1999.

Decided July 27, 1999.

Anabell Kinney, Pittsburgh, for appellant.

Stephen A. Zappala, Jr., and Karen Edwards, Pittsburgh, for appellee.

Before McGINLEY, J., SMITH, J., and NARICK, Senior Judge.

McGINLEY, Judge.

Sandra Comella (Comella) appeals from an order of the Court of Common Pleas of Allegheny County (trial court) which dismissed her appeal from the order of a district justice finding Comella guilty of harboring a dangerous dog under Section 502–A(a)(1)(ii) of the Dog Law (Law)[1], sentenced her to pay a fine of $300.00 plus costs and found her guilty as charged.

On January 4, 1998, Comella was walking her two dogs when she stopped on the side of her house to put some refuse in a container. As she did this, Comella

---

1. Act of December 7, 1982, P.L. 784, *as amended*, 3 P.S. § 459–502–A. This section was added by Section 2 of the Act of May 31, 1990, P.L. 213. Section 502–A(a)(1)(ii) provides:

(a) **Summary offense of harboring a dangerous dog.**—Any person who has been attacked by one or more dogs, or anyone on behalf of such person, a person whose domestic animal has been killed or injured without provocation, the State dog warden or the local police officer may file a complaint before a district justice, charging the owner or keeper of such a dog with harboring a dangerous dog. The owner or keeper of the dog shall be guilty of the summary offense of harboring a dangerous dog if the district justice finds beyond a reasonable doubt that the following elements of the offense have been proven:

(1) The dog has done one or more of the following:

. . . .

(ii) Killed or inflicted severe injury on a domestic animal without provocation while off the owner's property.

dropped the leash of one of her dogs. At this time Mary Jo Salmen (Salmen), Comella's neighbor, was walking her dog. Comella's dog ran toward Salmen and her dog. Salmen ran screaming from the scene. Comella's dog attacked Salmen's dog. Salmen's dog was seriously injured and underwent surgery for puncture wounds it received for cuts in the chest, back, hindquarters, nose and tail. The dog received at least ten stitches and was placed on pain medication and antibiotics. The cost of the veterinary services was $287.35.

On January 9, 1998, animal control officer, John Decker (Decker), cited Comella pursuant to Section 502–A of the Law that stated that Comella "did unlawfully keep or harbor a dangerous dog." Citation at 1; Reproduced Record (R.R.) at 1. On April 23, 1998, the district justice found Comella guilty of Section 502–A and fined her $300.00 plus costs. Comella appealed.

The trial court held a *de novo* hearing on July 28, 1998. Decker testified that he cited Comella on January 4, 1998, based on information received from Salmen. Salmen testified that Comella's dog pursued, bit and mauled her dog. Notes of Testimony, July 28, 1998, (N.T.) at 8–9. Salmen stated that the attack ended when her dog managed to run to her house. N.T. at 13.

Comella testified concerning the attack. On cross-examination, she admitted her dog previously bit another dog in October, 1997. N.T. at 28. Comella's counsel moved to dismiss on the basis that a violation is committed if a dog kills or inflicts serious injury on a *domestic animal* without provocation while off the owner's property but attacking a dog did not constitute a violation of the Law because dogs are

not included within the definition of a domestic animal. The trial court denied the motion.

The trial court accepted as credible the testimony of Decker and Salmen and rejected the testimony of Comella and accepted the Commonwealth's legal argument and rejected Comella's. The trial court found Comella guilty of Section 502–A as charged and affirmed the fine of $300.00 plus costs.

■ Comella contends that the phrase "domestic animal" as used in Section 502–A(a)(1)(ii) of the Law, 3 P.S. § 459–502–A(a)(1)(ii), does not apply to dogs for purposes of determining whether a dog who attacks another dog should be registered as dangerous under the Law.[2] The term, "domestic animal" is defined in Section 102 of the Law, 3 P.S. § 459–102, as "any equine animal or bovine animal, sheep, goat, pig, poultry, bird, fowl, confined hares, rabbits and mink, or any wild or semiwild animal maintained in captivity." This definition is contained in the 1996 amendments to the Law. Prior to this amendment, Section 102, the general definition section of the Law did not contain a definition for the term, "domestic animal". However, prior to amendment, Section 501–A of the Law, 3 P.S. § 459–501–A, the definitional section for the portion of the Law dealing with dangerous dogs, defined a domestic animal as "[A]ny dog, cat, equine animal, bovine animal, sheep, goat or porcine animal." When the Law was amended in 1996, this section was deleted. Comella asserts that because the new definition does not include dogs and because the deleted definition section did include dogs, Section 502–A(a)(1)(ii) of the Law does not apply when one dog attacks another dog.[3]

*Department of Transportation v. Tarnopolski,* 533 Pa. 549, 626 A.2d 138 (1993).

**2.** Our review is limited to whether the trial court's findings are supported by competent evidence, whether errors of law have been committed or whether the trial court's determinations demonstrate a manifest abuse of discretion. *Commonwealth of Pennsylvania,*

**3.** For further support, Comella notes that Section 501 of the Law, 3 P.S. § 459–501(a), which makes it legal to kill certain dogs distinguishes between dogs and domestic ani-

This Court's aim in statutory construction is to ascertain and effectuate the intent of the legislature. Section 1921(a) of the Statutory Construction Act of 1972(Act), 1 Pa.C.S. § 1921(a). When the language of a statute is clear and unambiguous, any further deliberation as to its meaning is unwarranted. Section 1921(b) of the Act, 1 Pa.C.S. § 1921(b); *American Trucking Associations, Inc. v. Scheiner*, 510 Pa. 430, 509 A.2d 838 (1986), *rev'd on other grounds*, 483 U.S. 266, 107 S.Ct. 2829, 97 L.Ed.2d 226 (1987). If the words of a statute are not explicit, we may consider, among other matters, the occasion and necessity for the statute, the circumstances under which it was enacted, the mischief to be remedied, the object to be attained, the former law, if any, including other statutes upon the same or similar subjects, the consequences of a particular interpretation, the contemporaneous legislative history and the legislative and administrative interpretations of the statute. Section 1921(c)(1–8) of the Act, 1 Pa.C.S. § 1921(c)(1–8); *Meier v. Maleski*, 670 A.2d 755, 759, (Pa.Cmwlth.1996), *affirmed*, 549 Pa. 171, 700 A.2d 1262 (1997). Ordinarily, a change in the language of a statute indicates a change in the legislative intent. *Commonwealth v. Pierce*, 397 Pa.Super. 126, 579 A.2d 963, 965 (1990), *petition for allowance of appeal denied*, 527 Pa. 609, 590 A.2d 296 (1991). However, when interpreting a statute, the practical results of a particular interpretation must be considered. Section 1921(c)(6) of the Act, 1 Pa.C.S. § 1921(c)(6); *Meier*, 670 A.2d at 760. Further, the legislature cannot be presumed to have intended a result that is absurd or unreasonable. *Eritano v. Commonwealth*, 547 Pa. 372, 690 A.2d 705 (1997).

We must reject Comella's interpretation. The Law contains some ambiguity as dogs are not specifically identified in the definition of a domestic animal but a dog is commonly characterized as a domestic animal. The term, "dog" is defined in Section 102 of the Law, 3 P.S. § 459–102, as "the genus and species known as Canis familiaris." Webster's Third International Dictionary (1986) defines "canis" as "the chief and type genus of the dog family including the domestic dogs, the wolves and jackals, and sometimes in older classifications of foxes." The same dictionary defines "dog" as "a carnivorous mammal (*Canis familiaris*) of the family Canidae that has been kept in a domesticated state by man since prehistoric times." (Emphasis in original.)

It is clear that dogs are commonly considered domestic animals. While cognizant of the importance of a statute's exact wording, we must also examine whether the application of that wording leads to an absurd result. Under the Law, a dog's owner could be convicted of harboring a dangerous dog if the dog attacked an animal that is classified as domestic under the Law such as a horse, cow, sheep, or goat or even an ostrich which is being kept in captivity. Under Comella's interpretation of the Law, a dog could repeatedly attack dogs and cats when not on its own property, and the owner would not be a violator of the Law. We do not believe that the Legislature intended such an absurd result. Although Comella contends that the clear intent of the 1996 amendment is to protect agricultural animals, we simply do not believe that the legislature intended to exclude dogs and, for that matter, cats from the definition of a domestic animal. Section 102 of the Law states that "the following words and phrases when used in this act [the Law] shall have, unless the context clearly indicates otherwise, the meanings given them in this section." Here, the context indicates that the accepted meaning of the term "domestic animal" controls.

Accordingly, we affirm.

mals because the section states "Any person may kill any dog which he sees in the act of pursuing or wounding or killing any domestic animal, wounding or killing other dogs, cats or household pets."

*ORDER*

AND NOW, this 27th day of July, 1999, the order of the Court of Common Pleas of Allegheny County in the above-captioned matter is affirmed.