J-A27002-15

2016 PA Super 52

| JAMES AND MAUREEN FRANCISCUS, AS PARENTS AND NATURAL GUARDIANS OF FEMINA FRANCISCUS, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellants | |
| v. | |
| TOLGA SEVDIK, AN INDIVIDUAL, ASHLEY DAILEY, AN INDIVIDUAL AND JOHN STEIGERWALD, AN INDIVIDUAL T/D/B/A FETCH PET CARE OF WEST HILLS/SOUTH HILLS, | |
| Appellee | No. 1699 WDA 2014 |

Appeal from the Order December 16, 2013
In the Court of Common Pleas of Allegheny County
Civil Division at No(s): GD 11-025355

BEFORE: BOWES, OLSON, AND STABILE, JJ.

OPINION BY BOWES, J.:                    **FILED FEBRUARY 29, 2016**

James and Maureen Franciscus ("Parents") commenced the within negligence action to recover damages for injuries sustained by their minor daughter, Femina, when she was bitten by Tolga Sevdik's pit bull, Julius. At the time of incident, the dog was being walked by Ashley Dailey, an employee of Fetch Pet Care of West Hills/South Hills, which is owned and operated by John Steigerwald (collectively "Pet Care defendants"). The trial court granted summary judgment in favor of the Pet Care defendants, and the case against Mr. Sevdik was tried and an arbitration award in the amount of $4,000 was entered in favor of Parents. After thorough review,

we vacate the summary judgment order and remand for further proceedings.[1]

On December 18, 2009, five-year-old Femina was playing outside her home when she encountered Julius who was being walked by Ms. Dailey. The child asked if she could pet the dog, and when she bent over to do so, the dog jumped up and bit her on the chin. Femina was taken to Mercy Hospital for treatment.

Parents commenced this negligence action against Mr. Sevdik, the owner of the dog, Ms. Dailey, the dog walker, and Mr. Steigerwald, the individual owner and operator of Fetch Pet Care of West Hills/South Hills. After the close of the pleadings and discovery, all defendants filed motions for summary judgment. The trial court denied Mr. Sedvik's motion for summary judgment but granted summary judgment in favor of the Pet Care defendants, finding no evidence from which one could infer the latter should have been aware of the dog's dangerous propensities.

The parties agreed that the case against Mr. Sevdik would be transferred to the arbitration division and that the decision of the arbitrators

_____

[1] Parents purport to appeal from the order granting summary judgment in favor of the Pet Care defendants. This appeal properly lies from the final judgment disposing of all issues as to all parties, which constituted the final order entered against Mr. Sevdik. **See** footnote 2, **infra**. We note that once a final, appealable order has been appealed, any prior interlocutory order can be called into question. **K.H. v. J.R.**, 826 A.2d 863 (Pa. 2003).

would be final. The case was tried on September 17, 2014, and the board of arbitrators returned a verdict in favor of Parents in the amount of $4,000.[2] On October 14, 2014, Parents filed the within appeal challenging the propriety of the trial court's grant of summary judgment in favor of the Pet Care defendants.[3]

Parents raise four issues on appeal:

1. Whether the trial court properly considered evidence of record from which a conclusion could be drawn that the dog service had been put on notice of the dog's dangerous propensities?

2. Whether the lower court correctly found that based upon the record, the Defendants were entitled to summary judgment as a matter of law?

3. What evidence of record caused the trial court to find that summary judgment was proper for the Defendant dog service but not for the Defendant dog owner?

4. Whether it is an established fact that the pit bull breed has a dangerous propensity for inflicting serious injuries on people?

_____

[2] A review of the docket reveals that neither Parents nor Mr. Sevdik praeciped for the entry of final judgment on the verdict. Thus, technically, the instant appeal is premature. However, the parties agreed that the arbitration verdict would be binding, clearly intending it "to be a final pronouncement on the matters." *Bonavitacola v. Cluver*, 619 A.2d 1363 (Pa.Super. 1993). In these circumstances, considerations of judicial economy permit us to "regard as done that which ought to have been done." *Johnson the Florist, Inc. v. TEDCO Constr. Corp.*, 657 A.2d 511, 514-15 (Pa.Super. 1995); *accord Mackall v. Fleegle*, 801 A.2d 577 (Pa.Super. 2002). We will consider this appeal as being properly before our Court from the judgment entered on the arbitration award.

[3] Mr. Sevdik is not participating in the within appeal.

- 3 -

Appellants' brief at 4.

Parents' first three issues implicate the propriety of the trial court's grant of summary judgment and we will discuss them together. The following principles govern our review.

> [S]ummary judgment is appropriate only in those cases where the record clearly demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. When considering a motion for summary judgment, the trial court must take all facts of record and reasonable inferences therefrom in a light most favorable to the non-moving party. In so doing, the trial court must resolve all doubts as to the existence of a genuine issue of material fact against the moving party, and, thus, may only grant summary judgment where the right to such judgment is clear and free from all doubt. On appellate review, then, an appellate court may reverse a grant of summary judgment if there has been an error of law or an abuse of discretion. But the issue as to whether there are no genuine issues as to any material fact presents a question of law, and therefore, on that question our standard of review is de novo. This means we need not defer to the determinations made by the lower tribunals. To the extent that this Court must resolve a question of law, we shall review the grant of summary judgment in the context of the entire record.

*Summers v. Certainteed Corp.*, 997 A.2d 1152, 1159 (Pa. 2010) (internal quotations and citations omitted).

At issue herein is whether, on the record before us, the trial court erred in finding no evidence that the Pet Care defendants knew or should have known of Julius' dangerous propensities that could subject them to liability for negligence. Generally,

"one who possesses or harbors a domestic animal that he does not know or have reason to know to be abnormally dangerous, is subject to liability for harm done by the animal if, but only if,

(a) he intentionally causes the animal to do the harm, or

(b) he is negligent in failing to prevent the harm.

*Kinley v. Bierly*, 876 A.2d 419, 422 (Pa.Super. 2005) (quoting Restatement (Second) of Torts § 518: Liability for Harm Done by Domestic Animals That Are Not Abnormally Dangerous). A dog owner is subject to liability for negligence for injuries caused by his dog when he knows or has reason to know that the dog has dangerous propensities and yet fails to exercise reasonable care to secure the dog to prevent it from injuring another. *Deardorff v Burger*, 606 A.2d 489, 492 (Pa.Super. 1992). The same liability extends to custodians and keepers of a dog with known dangerous propensities while the dog is in their custody and control.[4]

Parents contend that, as a pet sitter, the Pet Care defendants were subject to the same liability as an owner while the dog was in their custody and control. They maintain that the record establishes that both Mr. Sevdik and Ms. Dailey knew that the sixty to seventy pound dog with a stocky body

_____

[4] This is consistent with the Pennsylvania Dog Law, 3 P.S. § 459-102, which defines owners as "every person who keeps or harbors such, or has it in his care." *See Commonwealth v. Seyler*, 929 A.2d 262 (Pa.Cmwlth. 2007) (upholding defendant's conviction of summary offenses under the Dog Law where dog resided in her home and she was walking the dog at the time of the attack).

- 5 -

and a big head had an energetic nature and a tendency to jump on people. This awareness, according to Parents, implies actual or constructive knowledge of the dog's dangerous propensities. In support thereof, they rely upon **Groner v. Hedrick**, 169 A.2d 302, 303 (Pa. 1961), for the proposition that "the law makes no distinction between an animal dangerous from viciousness and one merely mischievous or dangerous from playfulness," and the animal's motivation or "the mood in which it inflicts harm is immaterial." Therein, the Court cited the Restatement (Second) of Torts § 518 (1), which defines a dangerous propensity as including the tendency of an animal to do any act that might endanger the safety of a person in a given situation. **See also Rosenberry v. Evans**, 48 A.3d 1255 (Pa.Super. 2012) (whether dog's tic, which caused the animal to clench her teeth in a biting motion, may constitute a dangerous propensity, precluding grant of summary judgment).

In further support of their contention that Julius had dangerous propensities known to his owner and the Pet Care defendants, the Parents offered the following. Mr. Sevdik stated to Mrs. Franciscus that, "I always told her [Ms. Dailey] to make sure [the dog] was muzzled."[5] Plaintiffs' Answers to Interrogatories, No. 11; Maureen Franciscus Deposition,

_____

[5] A muzzle is defined as "[a] device, in any arrangement of straps or wires, placed over an animal's mouth to prevent the animal from biting or eating." 3 P.S. § 459-102.

- 6 -

2/27/13, at 5-7. He had a "Beware of Dog" sign on his front door. Finally, the Petsitting Work Order completed by Mr. Sevdik advised Pet Care that Julius should be walked for thirty minutes, "no dogs, children; Broadway --- a lot of dogs/people ---avoid." This evidence created reasonable inferences that Julius had dangerous propensities and that Mr. Sevdik and the Pet Care defendants knew of them.

The record reveals that, despite her acknowledged receipt of Mr. Sevdik's instructions, Ms. Dailey permitted the child to approach the unmuzzled dog. The dog jumped up, and, according to Ms. Dailey, the dog and the child bumped heads. She did not witness the dog biting the child but noticed the child bleeding. The child was treated for a five-centimeter T-shaped bite wound on the left side of her chin that left her with a one-centimeter scar.

The Pet Care defendants counter that the dog was loving and affectionate and never exhibited any type of vicious or violent behavior. They argue that the duty of a pet sitting service is akin to the duty of a landlord out of possession in **Rosenberry**, **supra**. Therein, this Court declined to impose liability for a pet bite unless the landlord had actual knowledge of a dangerous animal on its rental property and the right to control or remove the animal by retaking the premises.

Viewing the record in the light most favorable to the non-moving party, Parents herein, we find the following. The record evidences that Mr.

Sevdik, the owner of the dog, had a sign on his residence warning visitors of the dog. Ms. Dailey was aware that the sixty to seventy pound dog had a tendency to jump on people when excited. Mr. Sevdik purportedly directed the Pet Care defendants to use a muzzle when walking the dog but the dog was unmuzzled on the day in question. The Petsitting Work Order completed by Mr. Sevdik directed the Pet Care defendants to avoid routes where there were people, specifically children, and dogs. Giving Parents the benefit of all reasonable inferences, as we must do, we find sufficient evidence of record that Julius had a dangerous propensity to jump on people and possibly bite, if unmuzzled.

Herein, the dog was entrusted to the Pet Care defendants and in their control when the injury occurred. Since the Pet Care defendants knew the dog jumped on people, was to be muzzled when walked, and was not to be walked along routes where there were people, specifically children, and other dogs, they had a duty to use reasonable care while the dog was in their charge to protect others from harm. This is far different from the situation in **Rosenberry**, *supra*, where the issue was whether a landlord out of possession could be subject to liability to a third party injured by a tenant's dog on the tenant's premises. Therein, we held that the landlord had no duty unless he had both actual knowledge of the dog's dangerous propensities and the ability to control or remove the animal by retaking the premises. The duty herein flows from Pet Care's contractual undertaking to

assume responsibility for the dog while it was in its custody and control and its knowledge of its dangerous propensities. We find the circumstances herein sufficient to subject the Pet Care defendants to liability for failure use reasonable care to prevent the dog from harming others while in their custody and control. Summary judgment was improper.

Due to our disposition, we need not reach the issue whether the trial court erred in refusing to take judicial notice of dangerous propensities of pit bulls generally.[6] However, since we are remanding for further proceedings, we note that Pennsylvania law does not recognize a presumption that pit bulls as a breed are dangerous or have dangerous propensities. Our legislature, in crafting the Dog Law, did not define a pit bull or any other particular breed as a dangerous or vicious dog *per se*. **See** 3 P.S. § 459-502-A. Rather, that statute punishes dogs and owners only when a dog exhibits dangerous behavior. This is consistent with our tort approach to domesticated animals. Although the Restatement (Second) of Torts § 519, provides that, where a dog already has been determined to be dangerous based upon a prior incident, the owner or custodian of a dangerous dog is

---

[6] For argument in support of this proposition, Appellants refer this Court to their brief filed in the trial court. We do not permit parties to incorporate by reference arguments made in other briefs or pleadings. **See Commonwealth v. Briggs**, 12 A.3d 291, 342-343 (Pa. 2011) (calling the practice "unacceptable" "as a substitute for the proper presentation of arguments in the body of the appellate brief").

deemed to be carrying on an abnormally dangerous activity and is subject to strict liability for the harm that results, Pennsylvania has declined to adopt that rule. We have concluded instead that, "proof of negligence, in contrast to holding one absolutely liable, is the vehicle by which accountability for injury sustained because of a dog bite is to be established." *McCloud v. McLaughlin*, 837 A.2d 541, 544 (Pa.Super. 2003) (*quoting* *Deardorff v. Burger*, 606 A.2d 489, 493 (Pa.Super. 1992)).

Order vacated and case remanded for further proceedings consistent with this opinion. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/29/2016