## Johnson v. Vetter

*Richard J. Palazzo,* for plaintiff.
*Jeffrey D. Wright,* for defendants.

STENGEL, *J.,* February 13, 1991—This case raises the question of whether the ordinary handshake can become a basis for civil liability on a negligence theory.

Plaintiff was part of a musical group which was retained to entertain the Lititz Women's Club at the General Sutter Inn in Lititz on or about September 19, 1988. John Vetter, an employee of the General Sutter Inn, was introduced to members of the musical group and, apparently, extended his hand in an enthusiastic greeting to plaintiff, Helen Johnson. According to the complaint, he shook her hand so hard as to cause serious and permanent injuries to her shoulder and the cervical area of her spine. She

contends that she suffered a torn rotator cuff on her shoulder in addition to soft tissue injuries.

Plaintiff seeks damages based upon a theory that Mr. Vetter was negligent in his manner of greeting her and on an intentional tort theory that the handshake constituted a battery.

Defendants filed preliminary objections challenging a cause of action for a "negligent handshake." Plaintiff's complaint proceeds on a theory of negligence against Mr. Vetter and his employer, General Sutter Inn, and also against Mr. Vetter on an intentional tort theory. Defendants have also objected to the verification attached to the complaint contending that it is defective because it is signed by counsel, not by plaintiff.

In ruling on a demurrer, the court must accept as true all well-pled factual averments in the pleading in question. *Allegheny County v. Commonwealth,* 507 Pa. 360, 490 A.2d 402 (1985); *O'Hara Sanitation Company v. Commonwealth, Dept. of Environmental Resources,* 125 Pa. Commw. 441, 557 A.2d 453 (1989). Since sustaining a demurrer results in the denial of the pleader's claim or dismissal of his suit, a preliminary objection in the nature of a demurrer should be sustained only in cases that clearly and without a doubt fail to state a claim for which relief may be granted. *Allegheny County v. Commonwealth, supra; Vintage Homes Inc. v. Levin,* 382 Pa. Super. 146, 554 A.2d 989 (1989). If the facts as pled state a claim for which relief may be granted under any theory of law, then preliminary objections in the nature of a demurrer will be denied. *Allegheny County v. Commonwealth, supra; Dickens v. Upper Chichester Township,* 123 Pa. Commw. 226, 553 A.2d 510 (1989).

## I. *The Negligent Handshake Theory*

The handshake has been a significant vehicle of social contact for many years. It is, essentially, a consensual act between two informed persons with the intent of expressing a greeting, congratulations or a farewell. The question before this court is whether it is possible to be negligent in the act of handshaking and whether a cause of action for a negligent handshake has been or should be recognized under Pennsylvania law.

The social significance of the handshake is pointed out in *The Amy Vanderbilt Complete Book of Etiquette,* revised and expanded by Letitia Baldridge (1978), in the section entitled, "The Importance of the Handshake":

"Every bit as significant as the smile and warm tone of voice people should use to greet each other is the warm handshake that should accompany them. Your grip should be a firm one, a handshake of substance—but not a bonecrusher or too long-lasting, either. Two or three seconds is long enough to hold someone's hand in greeting. Don't let your handshake be a dismal, lifeless one, for people tend to think that character matches a handshake." L. Baldridge, *The Amy Vanderbilt Complete Book of Etiquette,* at 724.

No less an authority than Miss Manners has addressed the specific question of how a man and a woman should shake hands in her treatise, *Miss Manners' Guide to Excruciatingly Correct Behavior* (1982). When questioned about a man offering a firm handshake to a woman, Miss Manners notes:

"Many ladies wear rings on their right hands and many of these rings have stones in them. In the area between seeming wishy-washy and slicing off a lady's finger at the knuckle with her own diamond,

Miss Manners would rather a gentleman erred toward the wishy-washy. However, it should not be difficult for a gentleman of ordinary digital and manual sensitivity to adjust his handshake in response to the strength of a lady's." J. Martin, *Miss Manners' Guide to Excruciatingly Correct Behavior,* at 80.

Aside from the issues of legality, common civility would seem to permit a firm handshake between a man and a woman. While both Amy Vanderbilt and Miss Manners appear to suggest that the possible mismatch in strength and size dictate the firmness or enthusiasm of a cross-gender handshake, neither appears to suggest that the risk of an overly firm handshake is sufficiently strong as to require invoking the legal system or the threat of civil liability as a deterrent to the aggressive greeter.

There are no Pennsylvania cases imposing liability or even allowing for the possibility of liability for a negligent handshake. In this case, it would be necessary for plaintiff to show that Mr. Vetter and/or his employer owed a duty of ordinary care to protect plaintiff. In general terms, the law might recognize such a duty but the specific question today is whether this duty extends to the act of handshaking between Mr. Vetter and plaintiff. In order for there to be a case of negligence, plaintiff would need to show a duty, a breach of the duty, a causal relationship between the breach of the duty and the injury, and an actual loss. See *Casey v. Geiger,* 346 Pa. Super. 279, 499 A.2d 606 (1985), *appeal denied,* 516 Pa. 638, 533 A.2d 710 (1987); *Cummins v. Firestone Tire & Rubber Company,* 344 Pa. Super. 9, 495 A.2d 963 (1985), *appeal denied.*

In certain cases, our law recognizes a cause of action against a person or an animal with a known

propensity for certain harmful conduct. For example, under the doctrine commonly known as the "one bite rule," Pennsylvania law would impose liability on the owner of a dog which bit a person when the owner of that dog had notice of the dog's known propensity for biting. See, *Andrews v. Smith,* 324 Pa. 455, 188 A. 146 (1936); *Freeman v. Terzya,* 229 Pa. Super. 254, 323 A.2d 186 (1974). This known propensity is thought to have been established on the occasion of the dog's first bite of a human being.

Perhaps the "one bite" rule might transfer to a "one shake" rule in the context of greetings where no biting occurs but where equally unwelcome interpersonal exchanges take place. Indeed, this interesting case would be almost fascinating if defendant had a known propensity for tearing out shoulders when shaking hands. No such facts are alleged and so it is not necessary for this court to consider whether the "one shake" rule need be invoked or, if never previously invoked, then created under the facts of this case.

Given the widespread use of the handshake or other hand-to-hand greetings which would commonly fall under the general heading of "handshake," it is safe to assume that recognizing a cause of action for a negligent handshake would have a wide- and far-reaching impact. Political campaigns or social functions would never be the same again. One can only imagine the board meeting, the commencement exercise, the new employees' reception or the wedding receiving line, and how each would operate under the specter of a cause of action for a negligent handshake. This complicated world could become even more complicated if spontaneous expressions of appreciation, warmth, greeting or affection were tempered or prefaced by disclaimers or

warnings. It is one thing to have a warning sticker on your lawn mower. It is quite another to encounter a friend, fellow worker or candidate for public office equipped with a conspicuous label, sticker or decal warning you of his or her tendency to shake hands with vigor or, even worse, with abandon.

Because Pennsylvania law does not appear to recognize a cause of action for negligent handshake and because this court sees no compelling reason to find or impose such a duty under the facts of this case, defendants' preliminary objections to the negligence claim will be sustained. The cause of action stated in count II of the complaint, i.e., an intentional tort on a "battery" theory, is sufficient in its wording and statement to survive any preliminary objections. In fact, if the plaintiff can show the kind of intentional conduct which would warrant an instruction on a battery theory, then this claim would be properly part of the case. The sustaining of preliminary objections to the negligent handshake claim is in no way intended to comment on the merits of any such claims under an intentional tort theory.

## II. *Improper Verification*

Defendants have also objected to the verification to plaintiff's complaint. The complaint has attached to it a verification signed by *counsel* for plaintiff.

Rule 1024 of the Pennsylvania Rules of Civil Procedure requires that every pleading containing an averment of fact be accompanied by a signed verification of one or more of the parties. In the event that a party lacks sufficient knowledge or information or is outside the jurisdiction of the court and cannot sign a verification within the time re-

quired for the filing of a pleading, a representative of the party may sign such a verification.

The verification on the complaint in this case does not contain a statement that plaintiff is outside the jurisdiction of the court or that she cannot sign the verification for some legitimate reason. Nor is there an indication as to why counsel for plaintiff is signing the verification in the place of plaintiff.

For these reasons, the objection to the verification is sustained and plaintiff will be given 20 days from the date of the order accompanying this opinion to provide a proper verification under our Rules of Civil Procedure.

Accordingly, we enter the following

## ORDER

And now, February 13, 1991, upon consideration of defendants' preliminary objections and the briefs filed thereon, it is hereby ordered that defendants' demurrer to count I of the complaint is granted. Defendants' motion to strike the verification is granted and plaintiff will have 20 days from the date of this order to provide a proper verification under the Pennsylvania Rules of Civil Procedure. Defendants shall have 20 days from the date of this order to provide a responsive pleading to counts II and III of plaintiff's amended complaint.