IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
May 24, 2017 Session

## DEBORAH LACY v. MEHARRY GENERAL HOSPITAL ET AL.

Appeal from the Circuit Court for Davidson County
No. 16C-1053     Thomas W. Brothers, Judge

_____

### No. M2016-01477-COA-R3-CV

_____

Plaintiff sued a physician, alleging that the physician's handshake caused her injuries and that the physician failed to properly document her medical records. The trial court dismissed plaintiff's claims for failure to comply with the pre-suit notice and certificate of good faith requirements of the Health Care Liability Act. We conclude that the claim of failure to properly document plaintiff's medical records relates to the provision of, or failure to provide, health care services. Therefore, we affirm the dismissal of that claim for failure to comply with the Health Care Liability Act's procedural requirements. But we conclude the trial court erred in dismissing plaintiff's claim for injuries allegedly caused by the physician's handshake. Thus, we affirm in part, reverse in part, and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part; Reversed in Part; and Case Remanded**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which FRANK G. CLEMENT JR., P.J., M.S., and RICHARD H. DINKINS, J., joined.

Deborah Lacy, Madison, Tennessee, appellant, pro se.

Sara F. Reynolds and Ashley B. Waddle, Nashville, Tennessee, for the appellee, Nagendra Ramanna.

## OPINION

In this appeal, we consider whether the claims of Deborah Lacy against Dr. Nagendra Ramanna were properly dismissed for failure to comply with the

procedural requirements of the Health Care Liability Act (the "Act").[1]

**I.**

On April 14, 2016, Ms. Lacy filed a complaint against Dr. Ramanna in the Circuit Court for Davidson County, Tennessee. The complaint asserted two distinct claims against him. As to the first claim, the complaint alleged that Ms. Lacy made an appointment with Dr. Ramanna, a cardiologist, "to check why she was getting so out of breath while doing her daily chores since February 11, 2015." According to the complaint, "upon entering the room . . . Plaintiff extended her right hand for the [sic] Dr. Nagendra Ramanna to shake her hand and this is when he squeezed Plaintiff [sic] fingers to [sic] hard." Ms. Lacy generally described this interaction as "a beating" or "assault." As a result, Ms. Lacy complained that her "hand is in constant pain" and "the fingers no longer have any strength." As to the second claim, Ms. Lacy alleged that Dr. Ramanna "was also in [sic] fault when he read the Sonogram and did not add it to Plaintiff Lacy [sic] Medical Records." Filed with the complaint was a certificate of good faith signed by Ms. Lacy.[2]

In response, Dr. Ramanna filed a motion to dismiss, citing Ms. Lacy's failure to comply with the written pre-suit notice and certificate of good faith requirements under the Act. *See* Tenn. Code Ann. §§ 29-26-121 to -122 (2012 & Supp. 2017). According to Dr. Ramanna, Ms. Lacy's claims were governed by the Act because "[a]ll of the alleged events occurred during Dr. Ramanna's provision of medical care to Plaintiff."

On July 7, 2016, the court entered an order granting Dr. Ramanna's motion and dismissing the claims against him with prejudice. The court concluded that Ms. Lacy's claims were governed by the Act. And the court found that Ms. Lacy failed to submit proof that she provided pre-suit written notice to Dr. Ramanna and failed to submit a valid certificate of good faith.[3] Ms. Lacy timely appealed.

---

[1] By orders entered on November 1 and on November 18, 2016, this Court dismissed from this appeal Wendy Sumner Alexander, Meharry General Hospital, Donna Brigg, and Cathy Doss Chisam, each of whom had been named as defendants in the suit below.

[2] As Ms. Lacy explained in a pleading:

Plaintiff Lacy admits to signing the Good Faith certificate because she feels with her medical Lab Degree and other medical certificates and have [sic] worked in the field for some time on and off [sic] She knows standard protocol and one of them is that you do not beat and assault your patients.

[3] Among other things, the court found that Ms. Lacy was not a competent expert under Tennessee Code Annotated § 29-26-115 to express an opinion in this case. *See* Tenn. Code Ann. § 29-26-115(b) (2012) (describing the qualifications for an expert witness in a health care liability action).

2

## II.

The "proper way" for a defendant to challenge a plaintiff's noncompliance with the procedural requirements of the Act is by a motion to dismiss. *Myers v. AMISUB (SFH), Inc.*, 382 S.W.3d 300, 307 (Tenn. 2012). A motion to dismiss for failure to state a claim upon which relief can be granted challenges the legal sufficiency of the allegations in the plaintiff's complaint, not the strength of the evidence. *Ellithorpe v. Weismark*, 479 S.W.3d 818, 824 (Tenn. 2015). In resolving this motion, the court "must construe the complaint liberally, presuming all factual allegations to be true and giving the plaintiff the benefit of all reasonable inferences." *Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 426 (Tenn. 2011) (quoting *Tigg v. Pirelli Tire Corp.*, 232 S.W.3d 28, 31-32 (Tenn. 2007)). We review the trial court's decision to grant or deny a motion to dismiss de novo with no presumption of correctness. *Ellithorpe*, 479 S.W.3d at 824.

The court dismissed Ms. Lacy's claims based on her noncompliance with the pre-suit notice and certificate of good faith requirements under the Act. *See* Tenn. Code Ann. § 29-26-121(a)(1) (requiring any person with a potential health care liability claim to provide pre-suit notice of the claim to all health care providers who could be named as defendants); *id.* § 29-26-122(a) (requiring the plaintiff to file a certificate of good faith with the complaint when expert testimony is required); *see also id.* § 29-26-122(c) ("The failure of a plaintiff to file a certificate of good faith . . . shall, upon motion, make the action subject to dismissal with prejudice."); *Foster v. Chiles*, 467 S.W.3d 911, 916 (Tenn. 2015) (holding that "dismissal without prejudice is the proper sanction for noncompliance with" the pre-suit notice requirement). On appeal, Ms. Lacy does not dispute that she failed to fully comply with these procedural requirements. Rather, she argues that the trial court erred when it concluded that her complaint asserted claims for health care liability.

Under the Act, a health care liability action is defined as "any civil action . . . alleging that a health care provider or providers have caused an injury related to the provision of, or failure to provide, health care services to a person, regardless of the theory of liability on which the action is based." Tenn. Code Ann. § 29-26-101(a)(1) (Supp. 2017). The Act goes on to define "[h]ealth care services" as, among other things, "care by health care providers," including physicians, and "staffing, custodial or basic care, positioning, hydration and similar patient services." *Id.* § 29-26-101(b).

Neither party disputes that Dr. Ramanna is a "health care provider" or that this case is a "civil action." So the appropriateness of the trial court's decision turns on whether the allegations in Ms. Lacy's complaint, and any reasonable inferences therefrom, described injuries that "relate[] to the provision of, or failure to provide, health care services."

3

As noted above, Ms. Lacy's complaint alleged two distinct claims against Dr. Ramanna: (1) that he allegedly assaulted her by shaking her hand too hard causing injuries and (2) that he failed to properly document her medical files after he analyzed her sonogram.

As an initial matter, we note that Ms. Lacy did not address—or even mention—the issue of whether the claim that Dr. Ramanna failed to properly document her medical records after he analyzed her sonogram was subject to the Act. In a typical case, we would consider this issue waived. *See Bean v. Bean*, 40 S.W.3d 52, 55 (Tenn. Ct. App. 2000) (considering an issue waived when there is no argument as to its merits in the appellate brief). But because Dr. Ramanna nevertheless addressed the issue in his appellate brief, we exercise our discretion to consider the issue. *See* Tenn. R. App. P. 2. Upon consideration, we conclude that any claim describing a doctor's failure to analyze a diagnostic test result and to properly document the result in a patient's medical records clearly "relate[s] to the provision of, or failure to provide, health care services." Thus, we affirm the dismissal of this claim based on Ms. Lacy's failure to comply with the Act's procedural requirements.

But whether the claim that Dr. Ramanna shook Ms. Lacy's hand too hard "relate[s] to the provision of, or failure to provide, health care services" is less clear.[4] At oral argument, Ms. Lacy maintained that Dr. Ramanna "hadn't even said hello before he squeezed [her] fingers" and that "the door wasn't even closed." As we perceive it, Ms. Lacy appears to be arguing that the offending handshake operated either as a non-verbal greeting unconnected to any health care service or an "assault."

---

[4] According to Dr. Ramanna, "a health care liability action can arise before or after the physical examination and treatment of a patient." *See Ellithorpe*, 479 S.W.3d at 828 (holding that plaintiffs' complaint alleging "negligence in the provision of health care services by a covered health care provider" including an intake for counseling was subject to the Act's requirements); *Estate of Thibodeau v. St. Thomas Hosp.*, No. M2014-02030-COA-R3-CV, 2015 WL 6561223, at *7 (Tenn. Ct. App. Oct. 29, 2015), *perm. app. denied*, (Tenn. Feb. 17, 2016) (applying the Act to hospital employees' alleged failure to properly support plaintiff while transferring her from a stretcher to her car even though plaintiff had already been discharged from the hospital). We agree. But we disagree with Dr. Ramanna's contention that, just because Ms. Lacy's "alleged injury occurred while [she] was at the hospital in an examination room during a doctor's appointment with Dr. Ramanna," her claim is subject to the Act's procedural requirements. In previous cases, we declined to apply such a bright-line rule. *See, e.g., Lacy v. Vanderbilt Univ. Med. Ctr.*, No. M2016-02014-COA-R3-CV, 2017 WL 6273316, at *6 (Tenn. Ct. App. May 4, 2017) (rejecting the notion that the Act governs "all claims that arise in a medical setting"); *Cordell v. Cleveland Tenn. Hosp., LLC*, No. M2016-01466-COA-R3-CV, 2017 WL 830434, at *6-7 (Tenn. Ct. App. Feb. 27, 2017), *perm. app. denied*, (Tenn. Aug. 17, 2017) (holding that plaintiff's allegation that a hospital employee raped her in her hospital bed, although it "ar[o]se in a medical setting," was not subject to the Act). *But cf. Osunde v. Delta Med. Ctr.*, 505 S.W.3d 875, 884-85 (Tenn. Ct. App. 2016) ("Given the breadth of the statute, it should not be surprising if most claims now arising within a medical setting constitute health care liability actions.").

For his part, Dr. Ramanna argues that Ms. Lacy's handshake "allegation involves 'basic care' or 'similar patient services' that Dr. Ramanna provided during [the] appointment." *See* Tenn. Code Ann. § 29-26-101(b). Specifically, at oral argument, counsel for Dr. Ramanna asserted that handshakes at the outset of an appointment serve a medical purpose, namely to build the patient's trust. In addition, a physician's handshake can serve a diagnostic function. But Dr. Ramanna's unspoken intent, even if true, is irrelevant at this stage in the litigation.

In reviewing a trial court's decision on a motion to dismiss for failure to state a claim upon which relief can be granted, we are limited to the allegations set out in the complaint and any reasonable inferences to be drawn from those allegations, which we must construe in the plaintiff's favor. *Webb*, 346 S.W.3d at 426. Accepting her allegations as true and allowing Ms. Lacy the benefit of all reasonable inferences, we cannot conclude that Dr. Ramanna's handshake related to the provision of, or failure to provide, health care services. Rather, one reasonable inference is that Ms. Lacy extended her hand merely as a greeting, a formality upon meeting, and Dr. Ramanna shook Ms. Lacy's hand either with the same intent[5] or to cause harm.[6] *See Rennick v.*

___

[5] Because "[t]he way you shake hands is considered to be an indication of your personality," NANCY TUCKERMAN & NANCY DUNNAN, THE AMY VANDERBILT COMPLETE BOOK OF ETIQUETTE 689 (1995), even well-intentioned handshakes can result in offense or injury. *E.g.*, *Johnson v. Vetter*, 11 Pa. D. & C.4th 24, 24-25, 29 (Pa. Ct. Com. Pl. 1991) (allowing plaintiff to proceed against defendant on an intentional tort theory for allegedly "sh[aking] [plaintiff's] hand so hard as to cause serious and permanent injuries to her shoulder and the cervical area of her spine" but ruling that plaintiff's negligent handshake claim was not recognized under Pennsylvania law). As one authority notes, "[W]hile a firm handshake of substance spells out someone with character[,] . . . you don't want to go overboard with a bone-crushing grip that brings forth a gasp from the recipient; a moderately firm clasp is best." TUCKERMAN & DUNNAN, *supra*, at 690. Decades ago, particular caution was advised when the handshake was executed between members of the opposite sex:

> Many ladies wear rings on their right hands, and many of these rings have stones in them. In the area between seeming wishy-washy and slicing off a lady's finger at the knuckle with her own diamond, Miss Manners would rather a gentleman erred toward the wishy-washy. However, it should not be difficult for a gentleman of ordinary digital and manual sensitivity to adjust his handshake in response to the strength of a lady's.

JUDITH MARTIN, MISS MANNERS' GUIDE TO EXCRUCIATINGLY CORRECT BEHAVIOR 80 (1982) (quoted with approval in *Johnson*, 11 Pa. D. & C.4th at 26-27).

[6] Indeed, most people use handshakes "[a]s a greeting, sign of friendship or goodwill, confirmation of a promise, bargain, etc.; (of combatants) as a sign of the absence of ill-feeling." *Rennick v. O.P.T.I.O.N. Care, Inc.*, 77 F.3d 309, 314 (9th Cir. 1996) (quoting Compact Oxford English Dictionary 1731 (2d ed. 1991)). "[A] handshake . . . as a greeting . . . is a social custom and an integral part of our culture." *Blue Movies, Inc. v. Louisville/Jefferson Cty. Metro Gov't*, 317 S.W.3d 23, 31 (Ky. 2010). But others may shake hands for nefarious, illegal, or even bizarre motives. *See, e.g.*, *Ridgeway v. Mt. Pleasant Police Dep't*, No. 10-11060-BC, 2011 WL 1884621, at *1 (E.D. Mich. May 18, 2011) (anointing people for the purpose of "cast[ing] out the evil associated with them"); *E.E.O.C. v. Circuit*

*O.P.T.I.O.N. Care, Inc.*, 77 F.3d 309, 314 (9th Cir. 1996) ("Handshakes are significant. When people shake hands, it means something, but several meanings are possible."); *cf. Rathbun v. Ward*, 866 S.W.2d 403, 409 (Ark. 1993) (deciding whether a juror's alleged handshake with an attorney was intended to be a "congratulatory handshake" or just as a "normal greeting").

While further evidence may demonstrate otherwise, at this stage of the proceedings, we cannot conclude that the Act applies to Ms. Lacy's handshake claim. *See, e.g., Lacy v. Mitchell*, No. M2016-00677-COA-R3-CV, 2016 WL 6996366, at *4 (Tenn. Ct. App. Nov. 30, 2016), *perm. app. denied*, (Tenn. Feb. 24, 2017) (reversing the dismissal of plaintiff's claim that defendant "beat [her] in the back with her medical folder" because "while it is still reasonable to infer that the alleged act was related to the provision of heath care services, it is equally reasonable . . . to infer that the act took place after [defendant] finished providing health care services to [plaintiff] and was leaving the appointment"); *cf. Kelly v. Cty. of Monmouth*, 883 A.2d 411, 416 (N.J. Super. Ct. App. Div. 2005) (holding that the fact finder must determine whether, based on the circumstances, plaintiff consented to defendant's inappropriate touching when the record, viewed in the light most favorable to plaintiff, suggested that plaintiff only consented to a handshake). Thus, we reverse the trial court's dismissal of Ms. Lacy's claim that Dr. Ramanna shook her hand too hard based on her failure to comply with the requirements of the Act.

## III.

Based on the foregoing, the trial court's judgment is affirmed in part and reversed in part. This cause is remanded for further proceedings as are necessary and consistent with this opinion.

_____
W. NEAL MᴄBRAYER, JUDGE

---

*City Stores, Inc.*, No. CIV A 07-CV-4006, 2008 WL 4140409, at *4 (E.D. Pa. Sept. 5, 2008) (inviting sexual contact); *State v. Porter*, 2004 WL 2419166, at *3 (Del. Super. Ct. Sept. 29, 2004) (delivering drugs inconspicuously); *People v. Williams*, 655 N.E.2d 997, 1001 (Ill. App. Ct. 1995) (signifying membership in a criminal gang); *Harman v. Commonwealth*, No. 1925-07-3, 2009 WL 362126, at *7 (Va. Ct. App. Feb. 17, 2009) (transferring communicable diseases).