**COMMONWEALTH of Pennsylvania**

v.

**Kenneth MARTZ, Appellant.**

**Commonwealth of Pennsylvania,**

v.

**Joseph Harvey, Appellant.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs March 31, 2003.
Decided May 23, 2003.

Thomas E. Leipold, Bloomsburg, for appellants.

Richard W. Knecht, Bloomsburg, for appellee.

BEFORE: McGINLEY, Judge, and SMITH–RIBNER, Judge, and JIULIANTE, Senior Judge.

OPINION BY Judge McGINLEY.

Kenneth Martz (Martz) and Joseph Harvey (Harvey) (collectively, Appellants) appeal from an order of the Court of Common Pleas of the 26th Judicial District (Columbia County Branch) (trial court) that directed Martz and Harvey to each pay the cost of prosecution, pay a fine of $1000.00 and serve probation for a period of twelve months.

On September 18, 2000, identical criminal actions were filed by Thomas L. Ohl (Ohl), a resident of Hemlock Township (Township) against Martz and Harvey, Supervisors of the Township, and alleged:

2. The [Appellants] evaded the provisions of 53 P.S. 68102 by purchasing or contracting for services and personal property piece-meal to obtain prices less than those required for advertising pursuant to 53 P.S. 68102 which requires that all contracts or purchases in excess of the required advertising amount of $10,000 ... shall not be made except with and from the lowest responsible bidder after due notice in one newspaper of general circulation in the Township. Notice for the bid shall be published for at least two times at intervals of not less than three days in daily newspapers or once a week for two successive weeks in weekly newspapers.

The [Appellants] purchased a chipper for $14,500 from Bradco Supply Co. The [Appellants] agreed to purchase the chipper by making six payments of

$1,800, or $10,800 and, in addition, traded a snow plow worth $3,000. Additionally, the [Appellants] agreed with Bradco Supply that Bradco would receive an additional $700 at the end of the supposed lease for a buy-out. This violated the advertising provisions of the Second Class Township Code which requires that any contracts for $10,000 or more be made only to the lowest bidder after proper advertising.

Private Criminal Complaint, December 18, 2000, at 1.

At a preliminary hearing, Russell Pennypacker (Pennypacker), former employee of the Township, Judy Snyder (Snyder), Township Auditor, and Cecil Ohl (Mrs. Ohl), a Township resident, testified on behalf of the Commonwealth.

Pennypacker testified that "[w]e went to Bradco Supply, Kenneth Martz and myself to look for a vibratory roller ... [u]pon looking at the vibratory rollers, we couldn't find anything that suited our needs ... [however] [w]e did come across the chipper while we was [sic] walking around their yard." Preliminary Hearing Transcript (P.H.T.), December 4, 2000, at 6; Reproduced Record (R.R.) at R11. Pennypacker stated he and Martz discussed that the Township "was renting a chipper from ASAP Rental at that time which was costly in rental and it would be better if the township owned their own." P.H.T. at 7; R.R. at R11. Pennypacker said that the cost of the chipper was $14,500.00 and that Bradco "would give them $3,000.00 trade-in price on the snowplow." P.H.T. at 10; R.R. at R12.

Snyder testified that "[t]hrough attending meetings and even through my auditing ... the books, reviewing checks, reviewing the invoices we found that the chipper had been purchased." P.H.T. at 14–15; R.R. at R13. Snyder stated that "there was [sic] six payments of $1,800.00

... a final buyout ... of $700.00 ... [and] there was a snowplow traded in towards the purchase price ... the value was $3,000.00 [for a total amount paid of] $14,500.00." P.H.T. at 22–23; R.R. at R15. Snyder said that "[t]he totals of all the payments ... raised the question that we had a piece of equipment that had not been bid and should have been." P.H.T. at 33; R.R. at R18.

Ohl testified that she "did not hear any bidding during the [township public] meetings" and that she "asked Mr. Harvey at that time did we rent the chipper or were we buying it ... [a]nd he said we had bought it." P.H.T. at 40; R.R. at R19. District Justice Richard Cashman found that the Commonwealth established a prima facie case against Martz and Harvey.

On February 23, 2001, Martz and Harvey filed omnibus pre-trial motions and alleged:

### Motion For Consolidation

. . . .

4. The facts and circumstances giving rise to the charges against Defendants Harvey and Martz are identical such that consolidation of the further proceedings against them will serve the interests of judicial efficiency and economy and will not be detrimental to the interest of said Defendants or the Commonwealth.

. . . .

### Writ Of Habeas Corpus

. . . .

8. Defendants assert that the District Justice erroneously concluded that the Commonwealth had established a prima facie case against Defendants and binding the matter over to the Court of Common Pleas. . . .

a. The statutory bidding requirement was not applicable to the transaction in question because the entire amount paid to the equipment supplier by the Township was less than $10,000;

b. There was no evidence that the Defendants knowing [sic] acted to evade the statutory bidding requirement in acquiring the equipment in question.

Omnibus Pre–Trial Motion of Defendant Joseph Harvey [1], February 23, 2001, Paragraphs 4 and 8 at 1–2; R.R. at R7–R8. On September 28, 2001, the trial court granted Martz's and Harvey's motion for consolidation but denied their motions for writ of habeas corpus. On October 17, 2001, the trial court denied Appellants' motion for reconsideration.

On December 13, 2001, Appellants filed a motion to dismiss pursuant to Pa. R.Crim.P. 600 (**Prompt Trial**) and alleged:

24. Defendants [Martz and Harvey] assert that the lapse of seven (7) months between the filing of their Omnibus Pre–Trial Motions and supporting Briefs on February 23, 2001 and the filing of the Commonwealth opposing Brief on September 25, 2001, which rendered said Motions ripe for disposition by the Court, reflects an absence of due diligence by the Commonwealth in attempting to bring this matter to trial.

Motion To Dismiss Pursuant To Pa. R.Crim.P. 600, Paragraph 24 at 4; R.R. at R65.

At a hearing on the motion to dismiss, Joseph Blass (Blass), Court Administrator of Columbia County, Tami Kline (Kline),

Prothonotary, Clerk of Courts, Carla Hess (Hess), Secretary for the District Attorney's Office, John McDanel (McDanel), District Attorney of Columbia County, and Thomas Leipold, attorney for Appellants, testified.

Blass testified that he did not receive an omnibus pre-trial motion on February 23, 2001, after it was filed with the Clerk of Clerks because the motion did not have a scheduling order.[2]

Kline testified that "[n]ormally any motion or petition filed by an attorney, there's a[sic] Order on the front or rule returnable so that it is scheduled before the Court ... [however,] [s]ometimes some are filed without that on and we just docket it and put it in the file." N.T. at 14; R.R. at R86. Where there is an order or a rule, Kline stated that "[w]e have what we commonly ... refer to as a day book ... [w]e'll just note what we send up to the Court Administrator and then it comes up to be signed by the Court and scheduled by the D.A.'s office." N.T. at 14; R.R. at R86.

Hess stated that she received the omnibus pre-trial motions on February 27, 2001, and that if a judge had signed the scheduling order she would set a hearing date on "April 30th of 2001." N.T. at 22; R.R. at R94. Hess stated that the actual hearing was scheduled on September 4, 2001.

McDanel testified that he never received from the Court Administrator any order signed by a judge directing that the omnibus pre-trial motion be scheduled for a hearing. Further, McDanel stated that

1. Martz also filed an omnibus pre-trial motion that mirrored the allegations in Harvey's motion.

2. Blass continued that a judge is assigned to review the motion and sign an order for a hearing date. The District Attorney's Office

then sets the actual date for the hearing. Blass stated that there was no record that this procedure was followed in this case. *See* Notes of Testimony (N.T.), January 31, 2002, at 7; R.R. at R79.

Leipold never requested that the omnibus pre-trial motion be expedited and a hearing held within forty-eight hours from February 27, 2001. N.T. at 29–30; R.R. at R101–02.

Finally, Leipold testified that he notified the District Attorney that the omnibus pre-trial motion was pending before the trial court and that no hearing was required for the disposition of the motion because the preliminary hearing transcript was attached to the motion. *See* N.T. at 40–41; R.R. at R112–13. The trial court denied the motion from the bench and stated "[t]he Court finds that they [District Attorney has] exercised due diligence.... I think certainly it's been too long, but in this particular case it's been systemic, if anything. It's not based upon the District Attorney at all. The Court schedules the hearings." N.T. at 49; R.R. at R121.

A jury trial was scheduled and held on March 18 and 19, 2002. Following the presentation of evidence, summations of counsel, the trial court instructed the jury on the law. At the conclusion of the jury charge, counsel objected to the Court's failure to instruct the jury in accordance with Harvey's and Martz's proposed point for charge no. 2. Appellants were found guilty. Martz was sentenced on June 11, 2002, and Harvey was sentenced on July 8, 2002.[3]

■ On appeal[4] Appellants contend: 1) that the trial court erred when it determined that the statutory bidding requirements under Section 3102(a) of the Second

Class Township Code (Code)[5], 53 P.S. § 68102(a) were applicable; 2) that the trial court erred when it determined that the Commonwealth commenced the trial within 365 days after the date the complaint was filed; and 3) that the trial court erred when it failed to instruct the jury pursuant to Appellants' proposed point for charge no. 2. This Court shall address the arguments seriatim.

### Preliminary Hearing

Initially, Appellants assert that the total amount of the actual payments made by the Township, and not the purchase price of the item, is measured against the $10,000.00 statutory threshold. Essentially, Appellants assert that the Township paid only $9,700.00 (five installments of $1,800.00 and a buyout payment of $700.00) for the chipper or $300.00 below the $10,000.00 statutory threshold.

Section 3102(a) of the Code, 53 P.S. § 68102(a) provides that "[a]ll contracts or purchases in excess of the required advertising amount of ... $10,000, except those specifically excluded, shall not be made except with and from the lowest responsible bidder after due notice in one newspaper of general circulation in the township." Further, Section 3102(d) of the Code, 53 P.S. § 68102(d) provides:

> The amount of the contract, whether of straight sale price, conditional sale, lease purchase or otherwise, is the entire amount the township pays to the successful bidder in order to obtain the

---

**3.** On August 30, 2002, Appellants' appeals were transferred from our Pennsylvania Superior Court to this Court. On September 27, 2002, this Court consolidated Harvey's and Martz's appeals.

**4.** This Court's review is limited to evaluating whether the trial court's findings were supported by competent evidence, whether legal

error was committed, or whether the trial court manifestly abused its discretion. *Commonwealth of Pennsylvania v. Comella*, 735 A.2d 738 (Pa.Cmwlth.1999).

**5.** Act of May 1, 1933, P.L. 103, as amended. Section 3102 added by the Act of November 9, 1995, P.L. 350.

services or property, or both, and does not mean only the amount which is paid to acquire title or to receive any other particular benefit or benefits.

■ Here, there is no dispute that Martz and Harvey did not advertise or solicit bids from prospective suppliers regarding the purchase of the chipper. At the preliminary hearing, Pennypacker testified that the purchase price of the chipper was $14,500.00. Snyder testified that the Township made six payments of $1,800.00 to Bradco Supply Co. (Bradco) and that a $3,000.00 trade in for the Township's snow plow was applied to the purchases price. Snyder also testified that a buyout payment of $700.00 was made to Bradco for a total payment of $14,500.00. Snyder stated that when she questioned the purchase a credit of $1,800.00 appeared. Here, the Commonwealth established a prima facie case that the purchase of the chipper was in excess of $10,000.00 and that Appellants failed to comply with the bidding requirements under Section 3102(a) of the Code. "The Commonwealth's burden at this stage falls short of proof beyond a reasonable doubt ... [t]he proof need only be such that, if the evidence were presented at trial and accepted as true, the trial judge would be warranted in allowing the case to go the jury." *Lagana v. Commonwealth of Pennsylvania, Office of Attorney General,* 443 Pa.Super. 609, 662 A.2d 1127, 1129 (1995).

## Motion to Dismiss Hearing

Appellants next contend that the criminal complaints were filed on October 26, 2000 [6], and that Appellants Pa.R.Crim.P. No. 600 motion was filed on December 13, 2001, 413 days after the complaints were filed. Appellants assert that the Commonwealth failed to exercise due diligence in bringing this matter to trial.[7]

Pa.R.Crim.P. No. 600(3) provides that "[t]rial in a court case in which a written complaint is filed against the defendant, when the defendant is at liberty on bail, shall commence no later than 365 days from the date on which the complaint is filed." The period of time between the filing of a motion to dismiss and the trial court decision on the motion is excludable for speedy trial purposes. *Commonwealth v. Stilley,* 455 Pa.Super. 543, 689 A.2d 242, 250 (1997).

■ First, the omnibus pre-trial motion was heard on September 4, 2001, and the trial court issued its decision on September 28, 2001, for an excludable period of twenty-four days. Second, Appellants filed a motion to reconsider on October 9, 2001, and the trial court denied it without hearing on October 17, 2001, for an excludable period of another eight days or a total of thirty-two days [8] that must be deducted

---

**6.** This Court notes that the docket entry from the certified record indicates that the private criminal complaints were filed on December 18, 2000, or approximately twenty-three days later than Appellants and the Commonwealth claim and as such would be credited to the Commonwealth. This Court may consider only the facts that have been duly certified in the record on appeal. *See Commonwealth v. Young,* 456 Pa. 102, 115, 317 A.2d 258, 264 (1974). *See also* Pa. R.A.P.1921.

**7.** Specifically, Appellants assert that: 1) the Commonwealth was aware of the filing of the omnibus pre-trial motion and supporting brief; 2) the Commonwealth was able to schedule the omnibus pre-trial motion on its own without a scheduling order attached to the motion; and 3) the Commonwealth provided no reasonable explanation during the Rule 600 hearing for the six month delay, other than the absence of the scheduling order.

**8.** If you add the twenty-three days as noted in footnote six to the thirty-two days, the excludable period of time is fifty-five days. If you subtract the fifty-five days from the 413 days the total time from the filing of the written complaint to the commencement of trial is

from the 413 days. Last, at the motion to dismiss hearing, Kline, the Prothonotary of the Clerk of Courts, testified there was no scheduling order attached to the pre-trial omnibus motion. Kline testified that because no scheduling order was attached to the motion, the motion was docketed and filed. Blass, the Court Administrator, testified that he did not receive the pre-trial omnibus motion because there was no scheduling order attached.[9] Finally, McDanel testified that he never received from the Court Administrator a signed scheduling order from the judge. The trial court determined that Appellants failed to follow the established procedure for filing a pre-trial omnibus motion.[10] As a result the trial court excluded the time from the filing of the pre-trial omnibus motion on February 23, 2001, until the hearing date on September 4, 2001. This Court agrees with the trial court that this delay was not attributable to the Commonwealth. The Pa. R.Crim.P. 600 motion was correctly denied.

### Jury Trial (Point for Charge No. 2)

Lastly, Appellants contend that the trial court erred when it failed to instruct the jury on the requested point for charge no. 2.

■ "When reviewing jury instructions for reversible error, an appellate court must read and consider the charge as a whole." *Commonwealth v. Clark*, 453 Pa.Super. 257, 683 A.2d 901, 904 (1996), *citing Commonwealth v. Dietterick*, 429 Pa.Super. 180, 631 A.2d 1347, 1352 (1993), *appeal denied*, 538 Pa. 608, 645 A.2d 1312 (1994). "We will uphold an instruction if it adequately and accurately reflects the law and is sufficient to guide the jury through its deliberation." *Id.* at 904, 645 A.2d 1312, *citing Commonwealth v. Ahlborn*, 441 Pa.Super. 296, 657 A.2d 518, 520 (1995).

---

355 days, or ten days under the mandatory 365 day limit.

9. The trial court to Blass:
   Q: The normal procedure then, Mr. Blass, is that a motion would be filed with the Clerk of Courts?
   A: Correct.
   Q: There would be a rule returnable on it which would be given to you.
   A: Correct.
   Q: You would docket it came in on your record, it's not a formal docket but informal docket that you keep track of these?
   A: Correct.
   Q: It would then go to a Judge who would sign it in blank and then go to the District Attorney to put in the date for a hearing?
   A: Correct.
   Q: And in this particular case, I note from the record that there was no rule returnable put on this particular motion so, therefore, it wouldn't have come to you—
   A: That's correct.
   Q: —to put on your docket and it wouldn't have come to a Judge at that point to note a hearing date?
   A: Correct.

Court: And I just note from the record that the omnibus pre-trial motion with the rule returnable for a date of hearing was filed on 2/23/01 and the hearing was actually held on September 4th, 2001....
N.T. at 11–12; R.R. at 83R–84R.

10. Specifically, the trial court found:
   In this case, defendants' [Appellants'] counsel only gave a copy of the motion to the district attorney, and none to the court administrator. Thus no hearing was promptly scheduled since it is the court's administrator's duty to follow up with the district attorney. Apparently, the district attorney thought that he only received a copy from the defendants [Appellants] and was waiting for the copy for scheduling a hearing from the court administrator. Thus, any delay was occasioned by the defendants' procedural error in not providing the court administrator with a copy to initiate the scheduling process.
   Opinion of the trial court at 4.

■ Appellants requested the following point for charge no. 2:

> For purposes of applying the advertising and bidding requirement of the Second Class Township Code, it is the amount of the actual expenditure of public fund, rather than the fair market value of the transaction, which is to be measured against the Ten Thousand Dollar ($10,000.00) threshold to which the advertising and bidding requirement relates.
>
> If you find that the amount of the actual expenditure of public funds by Hemlock Township for the purchase of its chipper was less than Ten Thousand Dollars ($10,000.00), not including the value of any equipment traded-in by the Township, the advertising and bidding requirement is not applicable to this transaction and you must find the Defendants not guilty.

The trial court denied the requested point of charge but instructed the jury pursuant to the applicable law under Section 3102(d), 53 P.S. § 68102(d).[11] This Court concurs with the trial court that "defendants assert that this court should have instructed the jury that the trade-in value of the property used to purchase the chipper should be excluded from the $10,000.00 bidding threshold requirement . . . [a]n 'expenditure' amounts to over $10,000.00 whether it is in the form of cash or a combination of cash and trade-in . . . [o]therwise a fiction could easily be created of the type which the statute specifically seeks to prohibit." Opinion of the Trial Court, September 12, 2002, at 4–5. After reviewing the charge given and the trial court's refusal of the requested point for charge no. 2, this Court concludes the trial court did not abuse its discretion or commit an error of law.

Accordingly, this Court affirms.

### ORDER

AND NOW, this 23rd day of May, 2003, the order of the Court of Common Pleas of the 26th Judicial District (Columbia County Branch) in the above-captioned matter is affirmed.

.

---

11. The trial court instructed the jury as to the following:

> The Defendants [Appellants] have each been charged with evasion of advertising requirements. The Pennsylvania municipal code provides that all contracts or purchases in excess of the required advertising amount of $10,000.00 with certain exceptions that aren't applicable here, shall not be made except with and from the lowest possible bidder. The code further says the amount of the contract, whether it's a straight sale, conditional sale, lease, lease purchase or otherwise is the entire amount the township pays to the successful bidder in order to obtain the services of property of both and does not mean only the amount which is to be paid to acquire title or to receive any other benefits.

> Now, the law further provides, and this is the definition of evasion of advertising requirements, no supervisor shall evade these requirements as to advertising for bids by purchasing or contracting for services and personal property piecemeal to obtain prices under the required advertising price
> . . . .
> Each of the Defendants claims that these alleged elements have not been proven at the time of the alleged offense because at the time of the alleged offense they were reasonably mistaken concerning the applicability of the advertising and bidding requirement *because they allege the amount of the actual monetary payment to purchase the chipper was less than $10,000.00 . . . .* (emphasis added).

Jury Charge, March 19, 2002, at 11; R.R. at R139.