IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Tyrone Medley,                          :
                    Appellant          :
                                        :
            v.                          :
                                        :
Southeastern Pennsylvania               :   No. 1516 C.D. 2018
Transportation Authority                :   Argued: June 8, 2020


BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
          HONORABLE MICHAEL H. WOJCIK, Judge
          HONORABLE CHRISTINE FIZZANO CANNON, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON              FILED: July 7, 2020


            Tyrone Medley (Appellant) appeals from the October 11, 2018 order of
the Court of Common Pleas of Philadelphia County (trial court) denying Appellant's
post-trial motion seeking a new trial.  Upon review, we affirm.

            Appellant alleges that he was injured on July 23, 2013, while working
as a train conductor for the Southeastern Pennsylvania Transportation Authority
(SEPTA).[1]  On May 10, 2016, Appellant filed a claim against SEPTA pursuant to
the Federal Employers' Liability Act, 45 U.S.C. §§ 51-60 (FELA).  The trial court
conducted a trial of the matter in February of 2018, at the conclusion of which the

---

[1] Appellant claims to have injured his wrist, neck, and back while lifting into place a portion
of a train known as a "trap door," the function of which is to enable passengers to board and
disembark trains safely on train platforms of differing heights.

jury found SEPTA not liable for Appellant's injuries. Appellant filed a post-trial motion seeking a new trial, claiming, *inter alia*, that the trial court erred by not charging the jury as he requested and by failing to grant a mistrial based on jury confusion. The trial court denied Appellant's post-trial motion on October 11, 2018, and Appellant appealed to this Court. Appellant forwards the same two claims on appeal. *See* Appellant's Brief at 5.

### *Motions for a New Trial*

Initially, we will discuss our review of the trial court's denial of Appellant's request for a new trial. As our Supreme Court has explained, "[t]rial courts have broad discretion to grant or deny a new trial." *Harman ex rel. Harman v. Borah*, 756 A.2d 1116, 1121 (Pa. 2000). "[W]hen analyzing a decision by a trial court to grant or deny a new trial, the proper standard of review, ultimately, is whether the trial court abused its discretion." *Id.* at 1122.

The Supreme Court has explained:

> Each review of a challenge to a new trial order must begin with an analysis of the underlying conduct or omission by the trial court that formed the basis for the motion. There is a two-step process that a trial court must follow when responding to a request for new trial. First, the trial court must decide whether one or more mistakes occurred at trial. These mistakes might involve factual, legal, or discretionary matters. Second, if the trial court concludes that a mistake (or mistakes) occurred, it must determine whether the mistake was a sufficient basis for granting a new trial. The harmless error doctrine underlies every decision to grant or deny a new trial. A new trial is not warranted merely because some irregularity occurred during the trial or another trial judge would have ruled differently; the moving party must demonstrate to the trial court that he or she has suffered prejudice from the mistake.

2

*Harman*, 756 A.2d at 1122 (internal citations omitted).  Further,

> [t]o review the two-step process of the trial court for granting or denying a new trial, the appellate court must also undertake a dual-pronged analysis.  A review of a denial of a new trial requires the same analysis as a review of a grant.  First, the appellate court must examine the decision of the trial court [whether or not] a mistake occurred.
>
> ***
>
> If the mistake involved a discretionary act, the appellate court will review for an abuse of discretion.  If the mistake concerned an error of law, the court will scrutinize for legal error.

*Harman*, 756 A.2d at 1122-23 (internal citations, quotation marks, and brackets omitted).

### *Federal Employers' Liability Act*

Initially, Appellant made his underlying claim against SEPTA pursuant to FELA.  In pertinent part, FELA provides as follows:

> Every common carrier by railroad while engaging in commerce between any of the several States or Territories, or between any of the States and Territories, or between the District of Columbia and any of the States or Territories, or between the District of Columbia or any of the States or Territories and any foreign nation or nations, shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or, in case of the death of such employee, to his or her personal representative . . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence,

3

in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.

45 U.S.C. § 51. This Court has explained the following regarding FELA claims:

> Under the FELA, an employer has the duty to provide its employees with a reasonably safe work environment and safe work equipment. If an employee is injured because of an unsafe condition, the employer is liable if its negligence played any part, even the slightest, in producing the employee's injury.
>
> In order to present a prima facie case under the FELA, a plaintiff must demonstrate that
>
>> 1) the plaintiff was injured while in the scope of his employment;
>>
>> 2) the plaintiff's employment is in furtherance of the railroad's interstate transportation business;
>>
>> 3) the employer was negligent; and
>>
>> 4) the employer's negligence played some part in causing the injury for which compensation is sought under the FELA.
>
> Under the FELA, the plaintiff must prove the [FELA-specific] elements of negligence: duty, breach, foreseeability, and causation. The plaintiff must show that the employer, with the exercise of due care, could have reasonably foreseen that a particular condition could cause injury. Foreseeability is an essential element of FELA negligence.
>
> In addition to causation, the [plaintiff] must show that the employer had actual or constructive knowledge of the hazardous condition. The [plaintiff] need not show actual or constructive knowledge if there is proof that the railroad

4

could by reasonable inspection have discovered the defect. In a FELA case, where a plaintiff alleges that an employer failed to provide a reasonably safe place to work, the employer's knowledge of the unsafe condition is an essential element. Whether the employer had actual or constructive knowledge of an alleged hazardous condition is to be determined by the jury, but only where the plaintiff has presented sufficient evidence to justify submitting the issue of knowledge to the jury.

*Manson v. Se. Pa. Transp. Auth.*, 767 A.2d 1, 3-4 (Pa. Cmwlth. 2001) (internal quotation marks and citation omitted). Additionally, our Supreme Court has explained that, "[a]lthough the slightest bit of negligence on the part of the employer is sufficient, liability under the FELA must be based on a showing of negligence and not on the mere fact that an employee was injured while on the job." *Hileman v. Pittsburgh & Lake Erie R.R. Co.*, 685 A.2d 994, 995-96 (Pa. 1996) (internal citation omitted).

### *Jury Instruction*

Appellant first claims that the trial court erred by failing to charge the jury as he requested. *See* Appellant's Brief at 21-28. Specifically, Appellant claims that the trial court erred by not giving the requested FELA-specific Proposed Instruction No. 11 on foreseeability and notice, which provides as follows:

How do you determine whether the defendant knew or, through the exercise of reasonable care, should have known of a particular risk of danger? First, you may consider any evidence presented concerning the actual knowledge of the railroad or its foreman or other agents. Second, you may consider any evidence presented concerning whether the risk was brought to the attention of the railroad or its foreman or other agents, for example, through employees' statements, complaints or protests that a particular condition or assignment was dangerous.

5

> Third, you may consider whether a reasonably prudent person would have performed inspections which would have brought the dangerous condition to the defendant's attention or otherwise would have known of the condition. If you find by a preponderance of the evidence that a reasonably prudent person would have taken reasonable precautions against the risk based on such actual knowledge, statements, complaints or protests or reasonable inspection, and you find that the defendant failed to take such reasonable precautions, then you may find that the defendant was negligent.

5 L. Sand, *et al.*, Modern Federal Jury Instructions, Instruction 89-11 (2017). Appellant argues that, by refusing to give the proposed charge, the trial court failed to properly apprise the jury as to how SEPTA should have known of the allegedly dangerous condition presented by the trap door. *See* Appellant's Brief at 28. Appellant argues that, had the trial court given the instruction, and had the jury found that a reasonably prudent person would have taken precautions to prevent the risk that the trap door would become dangerously heavy to lift based on the evidence presented, then the jury could have found SEPTA was negligent. *Id.* We do not agree that the trial court's decision not to read the specific proposed instruction rendered the trial court's instructions inadequate or inaccurate.

The purpose of jury instructions is to clarify the legal principles at issue. *Chicchi v. Se. Pa. Trans. Auth.,* 727 A.2d 604, 609 (Pa. Cmwlth. 1999). "A trial court has broad discretion in phrasing its instructions to the jury and can choose its own wording so long as the law is clearly, adequately and accurately presented to the jury for consideration." *Commonwealth v. King*, 721 A.2d 763, 778 (Pa. 1998). "Furthermore, a trial court need not accept counsel's wording for an instruction, as long as the instruction given correctly reflects the law." *Id.* at 778-79; *see also Williams v. Se. Pa. Transp. Auth.*, 741 A.2d 848, 858 (Pa. Cmwlth. 1999) ("[A trial]

6

court is free to phrase its jury instructions in words other than those proposed, so long as the words chosen clearly, adequately and accurately present the law to the jury."). As this Court has explained:

> When reviewing jury instructions for reversible error, an appellate court must read and consider the charge as a whole. [Appellate courts] will uphold an instruction if it adequately and accurately reflects the law and is sufficient to guide the jury through its deliberation.

*Commonwealth v. Martz*, 824 A.2d 403, 409 (Pa. Cmwlth. 2003) (internal quotations and citations omitted). Further, to constitute reversible error, a jury instruction, when considered in its totality, must not only be erroneous, but must also be prejudicial to the complaining party. *Chicchi,* 727 A.2d at 609.

Here, after SEPTA objected to Appellant's proposed jury charge, the trial court declined to issue Appellant's requested point for charge and instead instructed the jury, in relevant part,[2] as follows:

> The third element is whether the defendant or its employees or agents were negligent.

> The fact that plaintiff was injured during his employment does not automatically entitle him to recover from his employer. Plaintiff can only recover from the defendant if negligence, and the other elements I will describe, are established by a preponderance of the evidence.

> Negligence is simply the failure to use the same degree of care, which a person of ordinary prudence, would use in the circumstances of a given situation. It can

---

[2] The trial court's entire jury charge extends dozens of pages of the trial transcript. *See* Notes of Testimony (N.T.) at 29-56; Reproduced Record (R.R.) at 819a-46a.

7

be the doing of something which is reasonable – which a reasonably prudent person would not have done or failing to do something which a reasonably prudent person would have done under the circumstances.

Since the defendant is a corporate entity, which can only act through its officers, employees, and agents, it is liable under the FELA for their negligence.

The term "negligence", otherwise known as carelessness is the absence of ordinary care that a reasonably prudent person would use in the circumstances presented here. Negligent conduct may consist either of an act or a failure to fact [sic] where there is a duty to do so.

In other words, negligence is the failure to do something that a reasonably careful person would do or doing something that a reasonably careful person would not do, in light of all the surrounding circumstances established by the evidence in this case. It is for you to decide how a reasonably careful person would act in those circumstances.

The definition of negligence requires the defendant to guard against those risks or dangers of which a new [sic] or by the existence or the exercise, I'm sorry, of due care should have known. In other words, the defendant's duty is measured by what a reasonably prudent person would anticipate or foresee resulting from a particular circumstance.

The degree of care required by a reasonable care standard varies with the level of the risk. The greater risk of harm, the greater required level of care. Thus, the Federal Employers' Liability Act imposed on the defendant a duty to the plaintiff and to all of its employees to exercise reasonable care to provide him with a reasonable [sic] safe place in which to work. Reasonably

safe conditions in which to work and reasonably safe tools and equipment.

This duty includes responsibility to inspect the premises where the railroad employee will be working and their equipment and to take reasonable precautions to protect its employees from possible dangers.

If you have found that plaintiff by [a] preponderance of the evidence has shown that he was an employee of the defendant, Railroad,[3] acting in the course of his duties and that the defendant, Railroad, or its employees or agents were negligent, then you must decide whether an injury to the plaintiff resulted in whole or in part from the negligence of the Railroad or its employees or agents.

I have already explained that you may find the defendant, Railroad, liable to the plaintiff if the Railroad's negligence failed to provide plaintiff with a safe place to work or [was] otherwise negligence [sic]. And if such negligence played a part, even the slightest, in causing plaintiff's injuries.

In this case, the defendant, Railroad, has contended that plaintiff's injuries were due to plaintiff's own negligence. This is referred to as contributory negligence. However, if you find the plaintiff was negligent, that does not prevent plaintiff from recovering damages. If you find that the Railroad's negligence also played a part in causing plaintiff's injuries. Rather, it would result in a reduction of plaintiff's damages in proportion to the amount of negligence attributable to the plaintiff, as I will explain in detail shortly.

Notes of Testimony, February 16, 2018 (N.T.), at 42-46; R.R. at 833a-36a.

Of this instruction, the trial court explained:

---

[3] The trial court in this instruction uses the term "Railroad" to refer to SEPTA.

9

although [Appellant] was displeased that the [c]ourt did not use the Modern Federal Jury Instructions by Professor Sand that [Appellant] proposed [Appellant] never explained why the [c]ourt's charge on negligence was inadequate, nor did [Appellant] show how the jury was confused by the [c]ourt's instruction. As stated by [SEPTA], the [c]ourt highlighted the fact that the negligence of [SEPTA] can be imputed to it based on actions of employees or agents of [SEPTA]; covered failure to use ordinary care in a given situation; covered failing to act as a reasonably prudent person would act under the circumstances; covered the fact that a corporation must act through its officers, employees and agents, and their actions or inactions render [SEPTA] responsible; covered an obligation on [SEPTA] to guard against risks of harm, which were known to [SEPTA] or which could have been anticipated or foreseen by [SEPTA] or its agents; covered the sliding scale of responsibility, i.e.[,] the greater the risk of harm, the greater level of care required and the duty of the railroad company to provide [Appellant] with a reasonably safe place to work, reasonably safe conditions in which to work and reasonably safe tools and equipment; and included the responsibility to inspect the premises in advance of an employee encountering a danger, in order to protect that employee from danger. The [c]ourt's charge was comprehensive. It covered the concept of negligence as found in Pennsylvania law and throughout common law jurisdictions. It is in keeping with federal law and there was absolutely no error in the charge.

Trial Court Memorandum of Law dated October 11, 2018 (Trial Court Opinion) at 7-8.

We agree with the trial court that the negligence instruction in this matter adequately and accurately conveyed all the points of law from Appellant's desired instruction. The instruction discussed the basics of negligence as well as

negligence as it relates to corporations and corporations' agents and employees. The instruction explained that, under FELA, an employer maintains a duty to exercise reasonable care to provide employees with a safe place in which to work, safe conditions under which to work, and safe tools and equipment with which to work. The trial court's instruction also specifically discussed foreseeability and an employer's responsibility to inspect the premises and the equipment with which employees will be working and to take reasonable precautions to protect employees from possible dangers. The instruction expressly instructed the jurors that if, by a preponderance of the evidence, they found SEPTA, or its agents, to have been negligent in carrying out its duties/responsibilities, even in the slightest, the jury could find SEPTA liable to Appellant for his injuries. This instruction comports with the Pennsylvania Suggested Standard Jury Instruction for negligence[4] and also

---

[4] The Pennsylvania Suggested Standard charge for negligence provides as follows:

> In this case, you must decide whether *[name of defendant]* was negligent. I will now explain what negligence is.
>
> A person must act in a reasonably careful manner to avoid [injuring] [harming] [damaging] others.
>
> The care required varies according to the circumstances and the degree of danger at a particular time.
>
> You must decide how a reasonably careful person would act under the circumstances established by the evidence in this case.
>
> A person who does something a reasonably careful person would not do under the circumstances is negligent.
>
> A person also can be negligent by failing to act.
>
> A person who fails to do something a reasonably careful person would do under the circumstances is negligent.

Pennsylvania Suggested Standard Civil Jury Instruction 13.10 (2012).

11

covers foreseeability and FELA-specific employer obligations to inspect and maintain safe working conditions for employees contained in Appellant's desired model jury instruction. The trial court was not obligated to use any specific language to convey these principles to the jury. *See King*; *Williams*.

After reviewing the trial court's negligence instruction on the whole, as we must, we find no error of law or abuse of discretion in the trial court's decision not to read Appellant's requested jury instruction No. 11 verbatim to the jury.

### *Failure to Grant Mistrial*

Next, Appellant claims the trial court erred by refusing to grant a mistrial based on jury confusion. *See* Appellant's Brief at 29-36. Appellant claims that the discrepancies in the jury poll following the initial verdict coupled with the jury's failure to attribute 100% of negligence as instructed on the verdict slip illustrate that the jury was "hopelessly confused" and that the trial court therefore erred by not granting a mistrial. *Id.* at 32-35. We do not agree.

"The decision to grant or deny a motion for mistrial rests primarily in the discretion of the trial court." *Daddona v. Thind*, 891 A.2d 786, 809 (Pa. Cmwlth. 2006). "Absent a clear abuse of that discretion, an appellate court will not disturb the trial court's ruling." *Id.* Jury confusion warrants a new trial only where a trial court fails to adequately rectify the confusion. *See Dep't of Transp. v. Nemiroff*, 401 A.2d 10, 12 (Pa. Cmwlth. 1979); *Drum v. Shaull Equip. & Supply Co.*, 760 A.2d 5, 12 (Pa. Super. 2000) ("If a jury clearly is confused, and the trial court cannot rectify the confusion by appropriate instructions, a new trial is warranted.").

Appellant bases his jury confusion claim on events that transpired on February 16, 2018, after the jury reached its verdict. *See* N.T. at 59-75; R.R. at 849a-65a. When the jury returned to the courtroom after deliberation, the jury was asked

12

by the court crier how it responded to the questions on the verdict sheet. *Id.* The court crier asked the following:

> 1) Do you find by [a] preponderance of the evidence that the defendant, [SEPTA], was negligent? Yes or No?
>
> 2) Do you find by a preponderance of the evidence that the defendant's negligence caused, in whole or in part, an injury to the plaintiff? Yes or No?
>
> 3) Do you find by a preponderance of the evidence that the plaintiff, Tyrone Medley, was negligent? Yes or no?
>
> 4) Do you find by a preponderance of the evidence that the plaintiff's negligence caused, in whole or in part, an injury to the plaintiff? Yes or no?
>
> 5) To what extent, stated in percentage, did the plaintiff Tyrone Medley's negligence, if any, contribute about an injury to the plaintiff?[5]
>
> 6) What are Mr. Medley's total damages?

---

[5] The Trial Court Opinion states the fifth question as follows:

> Verdict Form No. 5. Taking the combined negligence that was a cause of any harm to Tyrone Medley as 100 percent, what percentage of that negligence do you attribute to Tyrone Medley and what percentage do you attribute to SEPTA?
>
> Percentage of negligence attributed to Tyrone Medley: ___
>
> Percentage of negligence attributed to SEPTA: ___
>
> Total 100%.

Trial Court Opinion at 9. While the verdict sheet does not appear in the record before this Court, during oral argument, counsel for Appellant confirmed that the version stated in the Trial Court Opinion was the form of the fifth question on the verdict sheet.

13

N.T. at 60-61. The jury answered "No" to the first question on the verdict sheet – whether SEPTA was negligent – and "No" to the second question of whether SEPTA's negligence caused Appellant's injuries in whole or in part. *Id.* at 60. The jury answered "Yes" to the third and fourth questions regarding whether Appellant was negligent and whether Appellant's negligence caused Appellant's injuries in whole or in part. *Id.* at 60-61. On the fifth question, the jury apportioned the negligence involved thusly: 60% negligence to Appellant and 0% negligence to SEPTA. *Id.* at 61. Finally, on question six, the jury indicated Appellant's total damages were $0.00. *Id.*

When polled, three of the first six jurors indicated that they did not agree with the verdict as stated. N.T. at 62. After discussing the matter with counsel at sidebar, the trial court sent the jurors back to continue deliberations with a newly drafted verdict slip that instructed the jurors to not answer any further questions if they answered "No" to the first question of whether SEPTA was negligent. *Id.* at 66.

After sending the jury back for further deliberations, the trial court stated the following:

> THE COURT: I just want to put a couple things on the record. We received a verdict, as the record will reflect, from the foreperson who said that the majority, 10 out of - - at least 10 out of 12 agreed on the verdict.
>
> The verdict sheet wasn't drafted properly, I take some responsibility for that. The attorneys should as well. After question number one it should have been, if you find SEPTA is not negligent, you don't have to answer any further questions because the questions on there, it appears as though the jury felt compelled to answer every one of them.

14

I didn't find the verdict to be inconsistent, at least on the sheet, because they found no liability against SEPTA, but it appears they felt compelled to put a number with respect to plaintiff because they erroneously thought they had to answer every question.

With that being said, when we polled the jury, three out of the first six said they disagreed with the verdict. At that point, I sought some guidance from Judge Fox as to how to proceed, because I think the attorneys and myself, first time experience, having a jury go against what the jury sheet said and I was advised and I agree that we were to tell them to continue to deliberate through the rest of the day and into Tuesday, if necessary.

This also gives us the opportunity to correct the verdict sheet. I have directed my staff to go down and make a new verdict sheet, where we're going to write in after question number one, if your answer is no to question number one, you are not to answer any further questions on the sheet. And we're going to let them deliberate at this point.

N.T. at 66-67. Appellant then requested a mistrial based on jury confusion, which the trial court denied. N.T. at 68-70.

Sometime later, the jury returned to the courtroom with another verdict. N.T. at 71. This time, the jury again answered the first question – whether SEPTA was negligent – in the negative. *Id.* Another poll of the jury then revealed only one juror disagreed with the verdict, and so the court recorded the verdict. *Id.* at 71-74.

Based on these events, the trial court determined that "the jury was never confused by the [trial c]ourt's instructions, nor were they [sic] confused during deliberations." Trial Court Opinion at 10. The trial court found that the juror in question – Juror No. 6 – was confused only by the polling question asked in the courtroom, not during deliberations. *Id.* Because the trial court drafted a new verdict

15

sheet that resolved the confusion, the trial court determined that the juror's confusion was not prejudicial to Appellant. *Id.*

The trial court properly denied Appellant's motion for a mistrial in this matter. The jury's responses from the initial verdict sheet clearly indicated that it found no negligence on SEPTA's part. The confusion, to the extent any existed, clearly stemmed from the jury's belief that it needed to answer all questions on the verdict sheet, and thus apportion negligence percentages, despite having answered the first question of whether SEPTA was negligent in the negative. The trial court resolved this confusion by re-drafting the verdict sheet to instruct the jury that, if it found SEPTA was not negligent in the first question, the rest of the questions on the sheet need not be answered. Having received this direction from the trial court, the jury continued its deliberations until reaching an 11-1 verdict, which satisfied the requirement that 10 out of 12 jurors agree with the verdict. The fact that, when polled, Juror No. 6 did not agree with the verdict does not indicate "hopeless confusion," but instead simply that one juror did not agree with the 11 others on a factual question in the case.

We agree with the trial court that Appellant's reliance on *Drum* is misplaced. *See* Trial Court Opinion at 10. *Drum* involved jury confusion occasioned by complex legal issues in a multi-party case that prompted mistrial motions from both parties. The confusion in the instant matter, on the other hand, was created by poor drafting of the verdict sheet, which confusion the trial court rectified by re-drafting the verdict sheet. As stated *supra*, relevant to this instant matter, *Drum* stands for the proposition that a trial court's order of a new trial is appropriate only where a trial court does not remove confusion, which it was able to do here.

16

The trial court's proper resolution of any existing confusion made the granting of a mistrial inappropriate. *See Nemiroff*; *Drum*. Accordingly, the trial court neither committed an error of law nor abused its discretion in denying Appellant's mistrial motion.

Because the trial court made no factual, legal, or discretionary mistake in this matter, we need not analyze whether Appellant was prejudiced by the trial court's denial of Appellant's post-trial request for a new trial. *See Harman*. Accordingly, we affirm the trial court's order.

_____
CHRISTINE FIZZANO CANNON, Judge

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Tyrone Medley,                                       :
             Appellant                  :
                                           :

          v.                                           :

                                           :

Southeastern Pennsylvania                 :     No. 1516 C.D. 2018
Transportation Authority                     :

## O R D E R

AND NOW, this 7th day of July, 2020, the October 11, 2018 order of the Court of Common Pleas of Philadelphia County is AFFIRMED.

_____
CHRISTINE FIZZANO CANNON, Judge